## *In re* E. B. AMBLER.

No. A-1770.   Opinion Filed September 26, 1914.

1. **HABEAS CORPUS** — Question for Consideration—Conviction in Lower Court. Upon habeas corpus, after a conviction had in a trial court, the inquiry is limited to the question of the jurisdiction of such court to try and determine the cause as presented to him.

2. **SAME—Validity of Statute—Jurisdiction of Court.** If the statute upon which a judgment is based is valid and the court has jurisdiction of the person and subject-matter, the writ should be denied.

3. **PHYSICIANS AND SURGEONS—Medical Practices Act—Validity.** The medical practices act as set out in the body of the opinion is a valid, constitutional law, enacted within the reasonable exercise of the police power of the state, and does not conflict with section 33 nor section 57, art. 5 of the Constitution of the state, nor with any provision in the federal Constitution. For a discussion of the relationship of this act to said sections of the Constitution, and the conclusions of the court in reference thereto, see opinion.

4. **SAME—Title of Bill.** The title of the medical practices act of Oklahoma relates primarily to one subject—that is, the practice of medicine, and all its features are cognate to the title as expressed and go to make up a complete enactment as a complement to the main purpose and intent thereof.

5. **STATUTES—Act to Embrace One Subject—Title of Bill—Construction.** Section 57, art. 5, Const., providing that an act of the legislature shall embrace but one subject, etc., has reference only to the body of the bill. The provision as to the explicitness of the title to the bill is directory and is not fatal to a measure simply because the title is broader than the act itself.

6. **SAME—Subject to Two Constructions—Title—Validity.** It is a well-settled rule, recognized by all the courts, that where a statute is subject to two constructions, one of which would render it invalid, the other sustain its validity, that construction which sustains the validity of the act should be adopted by the court, and this rule is equally applicable to titles to legislative enactments.

7. **SAME — Constitutionality—Liberally Construed.** It is equally well settled that a liberal construction should be applied to the acts of the Legislature and constitutional provisions as well in determining whether or not such enactments violate constitutional provisions, and only when acts of the Legislature are clearly contrary to the Constitution should the court hold them invalid.

8.  **PHYSICIANS AND SURGEONS**—Medical Practices Act—Revenue Provisions. Revenue is only an incident to the medical practices act of Oklahoma. Said act is not a revenue measure in contemplation of section 57, art. 5 of the Constitution.

9.  **STATUTES**—Revenue Measure—What Constitutes. A statute enacted within the reasonable exercise of the police power of the state may impose reasonable fees, and the imposition of such fees in no manner changes such law from a police regulation to a revenue measure. Such fees are not required to be based on the cost of the enforcement of the law or the issuance of permits thereunder.

10. **TAXATION** — Power of State — Limitations — Municipal Tax. Section 20, art. 10, Williams' Ann. Const. Okla., which provides: "The Legislature shall not impose taxes for the purpose of any county, city, town, or other municipal corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes," applies to purely municipal affairs, and does not constitute a limitation upon the power of the Legislature of the state to impose taxes for purposes which, although of a municipal character, the state has a sovereign interest in, such as taxation for police protection, for streets, highways, and bridges, for the purpose of establishing and maintaining a public school system, etc.

(Syllabus by the Court.)

Petition for writ of *habeas corpus.* Writ denied.

*Springer & Ousler,* for petitioner.

*W. C. Reeves,* Asst. Atty. Gen., for the State.

ARMSTRONG, P. J. The petition in this cause was filed in June, 1912, and the petitioner admitted to bail in the sum of $500 pending determination. Petitioner was convicted in the county court of Payne county upon an information charging the violation of the following statutory enactment (Comp. Laws 1909), section 4260 being the particular section covering the offense charged:

"Sec. 4242. Board created—term——vacancies.—A State Board of Medical Examiners is hereby established, to consist of nine members, learned in medicine, legal and active practitioners in the state of Oklahoma, who shall have resided and practiced medicine in the state under a diploma from a legal and reputable college of medicine of the school to which said practitioner shall belong for more than three years prior to their appointment, and no one of such schools shall have a majority on said board. Provided, that for the societies represented by

only one member, there shall be one alternate appointed by the Governor to act at the meeting of said board in case of the absence or inability of the regularly appointed member. Said alternate to derive the same benefits and subscribe to the same oath of office as the regularly appointed members of said board. The board shall be appointed by the Governor of the state of Oklahoma within thirty days after this act becomes effective, and the term of office therefor shall be four years, or until a successor is appointed and qualified. Provided, that the term of office of the first board shall expire with the term of the present Governor in January, 1911. Vacancies occurring at any time on the board shall be appointed by the Governor of the state of Oklahoma as provided for in this section, from a school of medicine from which the vacancy occurs, so that at no time shall one school have a majority on said board. It shall require a majority vote of said board to carry any motion, or resolution, to adopt any rule, or to pass any measure, or to issue any certificate to practice surgery and medicine as in this act provided. No member of said board shall be a stockholder or member of the faculty or board of trustees of any medical college or school.

"Sec. 4243.   Oath.—Each member of said board shall, before entering upon the duties of his office, take the constitutional oath of office from some one qualified to administer oaths, and shall, in addition, make oath that he is a graduate in medicine, and a legally qualified practitioner of medicine and surgery in this state; that he has been engaged in the active practice of medicine and surgery in this state, or in the territory formerly known as Oklahoma, or what was formerly known as Indian Territory, for a period of three years preceding his appointment.

"Sec. 4244.   Organization—treasurer's bond. — The State Board of Medical Examiners shall, immediately after the members shall qualify, organize by electing a president, vice-president, secretary and treasurer. The president of said board shall preside at all meetings of the board and perform such other duties as the board by their rules may prescribe. The vice-president shall perform all the duties of the president during the latter's absence or disability. The secretary shall keep a record of all the proceedings of the board and perform such other duties as are prescribed in this act, or which may be prescribed by said board. The treasurer shall, in order to qualify, give bond in the sum of $5,000, the same to be approved by the Governor, and filed with the Secretary of State. It shall

be his duty to receive and care for all money from the secretary, receipting him therefor, and to pay out the same upon written order of the secretary, countersigned by the president.

"Sec. 4245. Keep Record.—The Board of Medical Examiners shall preserve a record of its proceedings in a book kept for that purpose, showing name, age, place and duration of residence of each applicant, the time spent in medical study in respective medical schools, and the year and school from which degrees were granted. Said register shall also show whether applicants were rejected or licensed, and shall be *prima facie* evidence of all matters concerned therein. The secretary of the board shall, on March the first of each year, transmit an official copy of said register to the Secretary of State for permanent record, a certified copy of which, with hand and seal of the secretary of the said board or Secretary of State, shall be admitted in evidence in all courts of the state.

"Sec. 4246. Meetings—seal.—Said board shall hold regular meetings every three months in some convenient city or town in this state for the consideration of certificates, and may transact such other business which may properly come before it, and shall have the power to adjourn from time to time until its business is concluded; notice of the regular meeting of the board shall be given thirty days previous to the meeting of said board, by publication in at least one daily newspaper in each supreme judicial district. Said board shall procure a seal for its use and shall receive, through its secretary, applications for certificates provided to be issued under this act.

"Sec. 4247. Rules.—Said board may from time to time adopt such rules as may be necessary to carry into effect the provisions of this act. Any member of the board may administer oaths in all matters pertaining to duties of said board and the board shall have authority to take evidence on questions pertaining to the enforcement of this act.

"Sec. 4248. Requirements to practice medicine.—Every person before practicing medicine and surgery or any of the departments of medicine and surgery in this state, must have the credentials herein provided for. In order to procure such credentials, he must produce satisfactory evidence of good moral character and a diploma issued by some legally chartered medical school or college; the requirements of such medical school or college shall have been at the time of granting such diploma in no particular less than those prescribed by the American Association of Medical Colleges, or the Southern Association of

Medical Colleges in that year in which the diploma was granted: Or he must show satisfactory evidence of having possessed such diploma or license from some legally constituted institution which grants medical and surgical licenses only on actual examinations, or satisfactory evidence of having possessed such license or diploma. He must accompany said diploma or license with an affidavit showing that he is the person therein named and that the diploma or license was procured in the regular course without fraud or misrepresentation of any kind, such affidavit to be taken before any person authorized to administer oaths. The same shall be attested under the hand and seal of such officer, if he have a seal. In addition to such affidavit, the board shall hear such information as in its discretion it may deem proper as to any of the matters embraced in said affidavits. If it should appear from the evidence that said affidavit is untrue in any particular, or if it should appear that the applicant is not of good moral character, the application must be rejected: Provided, that osteopaths shall be subject to the above regulations with the exception that instead of the diploma hereinbefore mentioned, they shall be required to file a diploma from a legally chartered college of osteopathy in good repute as such, having a course of instruction of at least twenty months, requiring actual attendance thereon, and after 1907, of three years of nine months each. In addition to the requirements above set out, each applicant for a certificate, upon the payment of a fee of $15.00 to the secretary of the State Board of Medical Examiners, must be personally examined by said board as to his qualifications to practice medicine and surgery. The examination must be conducted in the English language, and shall be in whole or in part in writing, and shall be on the following branches, to wit, which branches shall be considered fundamental: Anatomy, histology, physiology, chemistry, physical diagnosis, bacteriology, pathology, medical jurisprudence, toxicology, surgery, gynecology, and obstetrics, the branches peculiar to the teachings of the school attended by the applicant, and such other additional subjects made necessary by the advance in medical education, as the board may designate or deem advisable to test the scientific and practical knowledge of the applicant: Provided, that the applicant shall be examined in theory and practice, *materia medica,* and therapeutics by those members of the board of examiners who represent the school of practice to which the applicant professes to belong; and be it further provided, that those legally qualified to practice medicine only in that school known as osteopathy shall not be permitted

to administer medicines internally in the treatment of diseases except in the use of anesthetics in the practice of surgery and obstetrics, and in cases of emergency. The credentials of applicants, which shall be sworn to by the applicants, relating to their general reputation, their preliminary education, and the course of studies that they have pursued; the degrees they have received; the number of years they have been engaged in the lawful practice of medicine; their experience in general hospitals, the medical department of the army, navy and public health and marine and hospital service, licenses granted to them by other states and countries, and their experience as teachers of medicine. All these shall be given consideration by the board in conducting its examinations. Provided, that nothing herein contained shall be so construed as to prevent mid-wives from practicing in cases of emergency. Provided, further, that those who use only herbs and roots and treat diseases without compensation shall not be required to register. Provided, however, that all physicians who have lawfully registered since statehood shall not be required to re-register under this act.

"Sec. 4249. When from other states.—The said board may, at its discretion, accept and register upon payment of the registration fee without examination of the applicant, any certificate which shall have been issued to him, or her, by the state board of examiners of other states, territories, or the District of Columbia. Provided, however, that the legal requirements of such medical examining board shall have been at the time of issuing such certificate in no degree or particular less than those of Oklahoma at the time when such certificate shall be presented for registration to the board created by this act, and provided further, that the provisions provided in this act shall be held to apply only to such of said medical examining boards as accept and register the certificates granted by this board without examination by them of the one holding such certificate. Each applicant upon making application shall pay to the secretary of the board a fee of $25 which shall be paid into the treasury of said board by its secretary.

"Sec. 4250. Applicants graded.—The said board of medical examiners shall conduct and grade all examinations, and all applicants who shall make an average grade of 70 per cent and a minimum in any one branch of 50 per cent, and who shall have complied with the conditions specified in section 4248, shall receive the certificate entitling such applicant to practice medicine in this state, subject to the performance by the said applicant of the heretofore preliminary conditions in this

act required. The applicants shall be known by numbers so that no member of said board shall be able to identify the applicants with their respective papers until said papers shall be finally graded. The questions and answers with the respective grades attached shall be preserved for two years, and shall be open to public inspection by all persons interested. In case of failure to secure the percentage required for a passing grade, the applicant may take another examination within twelve months without extra cost. Temporary permits may be granted and shall be effective until the next meeting of the board unless sooner revoked for cause. Provided, that the applicant shows good faith by payment to the secretary of the State Board of Medical Examiners the regular examination fee and delivering to the board such credentials and other evidences of intentions to become a *bona fide* resident of the state as the board may require.

"Sec. 4251. Certificate to practice.—When any applicant has shown himself to be possessed of the qualifications herein required and has successfully passed the examination, a certificate must be ·issued to him by said board authorizing him to practice medicine and surgery in this state. Said certificate shall be signed by each member of the board and sealed with the seal of said board: Provided, however, that all physicians and surgeons who were legally licensed and practicing in Oklahoma Territory and the Indian Territory on the 16th day of November, 1907, shall be required to register with the said board, but shall be exempt from examination, except as to their credentials, and shall be entitled to re-registration with the said board, and certificate of registration free of cost: Provided, however, that said physician and surgeon desiring re-registration shall make an application therefor within 90 days after this act becomes operative; such physician and surgeon failing to make such application within the said 90 days, shall be considered an illegal practitioner, and shall be dealt with as herein provided, for the violation of this act.

"Sec. 4252. Same—recorded.—Every person holding a certificate authorizing him to practice medicine and surgery in this state must have it recorded in the office of the county clerk, as herein provided. Every such person on the change of residence must have his certificate recorded in like manner in the county to which he shall have changed his residence, and said certificate shall be displayed in his office as evidence of having complied with the law. The absence of such record shall be *prima facie* evidence of the want of possession of such

certificate, and every person holding such certificate who shall practice medicine and surgery or attempt to practice medicine and surgery without first having recorded same with the county clerk, as herein provided, shall be deemed guilty of a misdemeanor.

"Sec. 4253. County clerk's 'Medical Register.'—It shall be the duty of the county clerk of the several counties of the state, immediately upon the taking effect of this act, to purchase, at the expense of the county, a suitable book to be known as the 'Medical Register' for the purpose herein set forth; said record shall be open to public inspection during office hours. The county clerk shall receive compensation in the manner provided in the statutes of Oklahoma for the recording of similar documents.

"Sec. 4254. Before certificate is refused—procedure.—Said board must refuse a certificate to any applicant guilty of unprofessional conduct, but before such refusal, the applicant must be cited by citation signed by the secretary of the board and sealed with its seal. No such citation shall be issued except upon a sworn complaint filed with the secretary of the board charging the applicant with having been guilty of unprofessional conduct and setting forth the particular act constituting such unprofessional conduct. Upon the filing of such complaint, the secretary must forthwith issue a citation and make the same returnable at the next session of the board occurring at least 30 days next after the filing of the complaint. Such citation shall notify the applicant of the time and place, when and where the matter of such unprofessional conduct shall be heard, and the particular unprofessional conduct with which the applicant is charged. The applicant shall file written answer under oath within twenty days after the service on him of such citation, or default will be taken against his application and certificate refused. The attendance of witnesses shall be compelled at such hearing by subpoenas issued by the secretary of the board under its seal and said secretary shall in no case refuse to issue any such subpoena upon the fee of 25 cents being paid to him for its issuance.

"Said citation and said subpoena shall be served in accordance with the statutes of this state, then in force as to the service of citation and subpoenas generally and all of the provisions of the statutes of this state then in force relating to the subpoenas are hereby made applicable to the subpoenas provided for herein. If any person refuses to obey a subpoena served on him or her according to the statutes of this state then in

force providing for the manner of serving subpoenas, the fact of such refusal shall be certified by the secretary of the said board under the seal thereof, to the county court of the county in which the service was had, and said court shall proceed to hear said matter in accordance with the statutes of this state then in force as to contempt for disobedience of its own process. In all cases of illegal or unprofessional conduct, arising under the provisions of this act and all the provisions of the statutes of this state then in force as to the taking of depositions are hereby made applicable to the taking of testimony under this act. If the applicant shall fail to file with the secretary of the said board his answer under oath to the charges made against him within twenty days after the service on him of said citation, or within such further time as the board may give him, the charges on the face may be deemed sufficient by the board, and default may be entered against him and his application refused. Whenever any holder of a certificate issued as herein provided shall be guilty of unprofessional conduct as defined by this act, and such unprofessional conduct is brought to the attention of the board granting said certificate in the manner herein pointed out, it shall be their duty to, and they must, at once, revoke the same, and the holder of such certificate shall not thereafter be permitted to practice medicine and surgery, or in any other departments of medicine and surgery in this state. But no such revocation shall be made unless such holder is cited to appear and the same proceedings are had, as is hereinbefore provided in this section, in case of refusal to issue certificates. The accused party at the time he presents his answer for filing, shall deposit with the secretary his certificate, and unless he does so, the secretary must not file his answer, and default may be thereon entered against him and his certificate revoked if the charges on their face be deemed sufficient by the board. When the certificate is revoked, the secretary of the board, if the certificate has been deposited with him, shall write across the face thereof in red ink, the fact of such revocation and shall file such certificate so revoked among the archives of his office under the seal of the board to the county clerk of the county of which the certificate of the person whose certificate has been revoked is recorded, and said county clerk must thereupon write on the margin or across the face of his register the fact and day of such revocation in accordance with this act. From the time of the revocation of certificate the holder shall be disqualified from practicing medicine in this state. The words 'unprofessional conduct' as used in this act are hereby declared to

mean: First. The procuring or aiding or abetting in procuring a criminal operation.   Second. The obtaining of any fee on the assurance that an incurable disease can be permanently cured. Third. The willful betrayal of a professional secret to the detriment of a patient.   Fourth. All advertising of medical business in which grossly improbable statements are made that are calculated to mislead the public.   Fifth. All advertising of any medicine or means whereby the monthly periods of women can be regulated or menses re-established, if suppressed.   Sixth. Conviction of any offenses involving moral turpitude.   Seventh. Habitual intemperance, and the habitual use of habit-forming drugs. Eighth. The employment of what is commonly known as 'cappers' or 'steerers' in procuring practice.   These specifications are not intended to exclude other acts for which license may be revoked on the ground of unprofessional conduct.

"Sec. 4255.   Salary of secretary.—Said board shall fix the salary of the secretary not to exceed one hundred and fifty dollars per year, and the other members of said board shall receive not to exceed six dollars per diem for each and every day of actual service in the discharge of their duties under this act, and the necessary traveling expenses, and all money in excess of the actual expenses of the board, as provided by this act shall be paid annually into the state treasury.

"Sec. 4256.   Penalty—practicing without license.—Any person practicing medicine and surgery in this state, without having at the time a valid unrevoked certificate as provided in this act, shall be deemed guilty of a misdemeanor and shall be fined not less than one hundred ($100) dollars nor more than five hundred ($500) dollars, or by imprisonment for a term of not less than sixty days nor more than one hundred and eighty days, or both such fine and imprisonment, and each day's practice shall constitute a separate offense.   All fines under the provisions of this section shall be paid into the road and bridge fund of the county wherein the conviction is secured.

"Sec. 4257.   Unprofessional services—penalty.—Any person who shall render professional services as a physician in this state, without first complying with the provisions of this act, shall, in addition to the other penalties prescribed herein, receive no compensation for such services; and no indebtedness shall be created thereby against the person for whose benefit such services shall be rendered.

"Sec. 4258.   False certificate.—Every person filing for record, or attempting to file for record the certificate issued to

another falsely claiming himself to be the person entitled to the same, shall be guilty of a felony and upon conviction thereof shall be subject to such penalties as are provided by the laws of this state for the crime of forgery.

"Sec. 4259. Who deemed practitioners.—The following persons shall be deemed as practicing medicine and surgery within the meaning of this act:

"First. Those who prescribe or administer any drug or medicine now or hereafter included in *materia medica* in the treatment of disease, injury, or deformity of human beings.

"Second. Those who practice major or minor surgery in the treatment of disease, injury or deformity of human beings, except dealers in surgical, dental, or optical appliances. The doing of any of the acts in this section mentioned shall be taken to be *prima facie* evidence of an intent on the part of the person doing any of the said acts to represent himself as engaged in the practice of medicine or surgery, or both. But nothing in this act shall be so construed as to prohibit the service in the case of emergency or the domestic administration of family remedies; nor shall this act apply to any commissioned medical officer in the United States army, navy, or marine hospital service in the discharge of his professional duties nor to any legally qualified dentist when engaged exclusively in the practice of dentistry, nor to any physician or surgeon from another state or territory when in actual consultation with a legal practitioner of this state, if such physician or surgeon is at the time of said consultation a legal practitioner of medicine and surgery in the state or territory in which he resides, nor to any physician or surgeon residing on the border of a neighboring state and duly authorized under the laws thereof to practice medicine and surgery therein, whose practice extends within the limits of this state, providing, that such physician or surgeon shall not open an office or a place to meet patients or receive calls within the limits of this state.

"Sec. 4260. Peddlers of medicine and medical appliances.— It shall be unlawful for any person to sell or offer for sale by peddling, or to offer for sale from house to house, or to offer for sale by public outcry, or to be vending in the street, any drug or medicine, pharmaceutical preparation, chemical or any composition or combination thereof, or any implement or appliance or other agency for the treatment of disease, injury or deformity, or by writing or printing or any other method to publicly profess to cure or treat any disease, injury, or de-

formity by any drug, nostrum manipulation, or other expedient, without previously obtaining a license therefor, as herein provided. An annual county license fee of fifty dollars is hereby levied upon all such itinerant vendors doing business in any county in this state. Said sum shall be paid to the county clerk, who shall pay the same over to the county treasurer for the use of the county road and bridge fund of said county. The county clerk shall thereupon issue a license showing the applicant has paid his license fee and is authorized to do business as above described in this section, in that county, for one year: Provided, however, that this shall not prevent incorporated towns or cities from levying an additional license on such vendors of aforesaid articles or goods. Any person who shall violate this section shall, upon conviction, be fined not less than fifty dollars nor more than one hundred dollars, or imprisonment, said fine to be turned over to the county treasurer for the use of the county road and bridge fund.

"Sec. 4261. Board to make report.—Said Board of Medical Examiners shall annually on or before the first day of January, file with the Governor a correct written report of all their proceedings, and account for all moneys received and paid out by them during the year.

"Sec. 4262. Appeal from board.—Any person who has been aggrieved by any act, rule or regulation of said board shall have his right of action to have such issue tried in the district court of the county in which some member of the board shall reside.

"Sec. 4263. Violation—penalty.—Any person who shall violate any of the provisions of this act, except as otherwise provided, shall be fined not less than ten dollars, nor more than one hundred dollars for each offense.

"A Resolution Empowering the Board of Health or Medical Examiners to Perform Certain Duties.

"Sec. 4264. Revision of errors.—Whereas, it is claimed that by mistake or otherwise, injustice has been done physicians of certain school or schools of medicine, in the administration of the territorial laws governing the admission of such physicians to practice their profession, as well as in the attempt to cancel the license of those previously admitted to practice; therefore, be it resolved by the House of Representatives, the Senate concurring therein: That the State Board of Health or Medical Examiners be, and is hereby empowered, authorized and directed to correct any such mistake or mistakes and right

any injustices that may have been done any applicant of any school of medicine for admission to practice, and restore to practice any one who, by mistake or otherwise, has been deprived of the right to practice his or her profession, without further cost or examination; that all physicians who have been granted licenses previous to statehood, regardless of school or schools, shall be placed on equal footing with the graduates of the same school, who have been granted license by the State Board of Health or Medical Examiners."

The act was approved July 10, 1909. The title to the same is as follows:

"An act to define and regulate the practice of medicine; to create a Board of Medical Examiners for the examination and licensing of physicians and surgeons, and to prescribe their qualifications; to provide for their proper regulation, and to provide for the revocation of their license; to require itinerant vendors to procure county license and to fix suitable penalties for the violation of this act, and repealing laws and parts of laws in conflict herewith."

The punishment of petitioner was fixed at a fine of $100. An appeal was taken to this court from the judgment, but was dismissed on motion of the Attorney General for non-compliance with statutory provisions.

The scope of the inquiry presented by this petition is limited, therefore, to the question of the jurisdiction of the court to try and determine the cause, it being the contention of petitioner that the statute is unconstitutional and void and that therefore the judgment against him is without authority of law.

In *Ex parte Woods,* 7 Okla. Cr. 645, 125 Pac. 440, we said:

"Where a prisoner in custody under sentence of conviction seeks to be discharged on *habeas corpus,* the inquiry is limited to the question of whether the court in which the prisoner was convicted had jurisdiction of the person of the defendant and of the crime charged; and if the trial court had jurisdiction and power to convict and sentence, the writ cannot issue to correct mere errors."

See, also, *In re Wilkins,* 7 Okla. Cr. 422, 115 Pac. 1118; *Ex parte Rupert,* 6 Okla. Cr. 90, 116 Pac. 350; *Ex parte Alexander,* 5 Okla. Cr. 196, 113 Pac. 993; *Ex parte Talley,* 4 Okla. Cr. 398, 112 Pac. 36, 31 L. R. A. (N. S.) 905.

The petitioner contends that the medical practices act, *supra*, violates sections 33 and 57 of article 5, Oklahoma Constitution. These provisions are as follows:

"Sec. 33. All bills for raising revenue shall originate in the House of Representatives. The Senate may .propose amendments to revenue bills. No revenue bill shall be passed during the five last days of the session.

"Sec. 57. Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title, except general appropriation bills, general revenue bills, and bills adopting a code, digest, or revision of statutes; and no law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be re-enacted and published at length: Provided, that if any subject be embraced in any act contrary to the provisions of this section, such act shall be void only as to so much of the law as may not be expressed in the title thereof."

Does the title of the act relate primarily to one subject, namely, the practice of medicine, and are all features of the act referable and cognate to the title as expressed, and do they go to make up a complete enactment or result as a complement to the main thought therein contained? We are of opinion that this question can be answered in the affirmative, and supported by ample authority, among them the following adjudicated cases: *Jefferson v. Toomer*, 28 Okla. 658, 115 Pac. 793; *Coyle v. Smith*, 28 Okla. 121, 113 Pac. 944; *Binion v. Okla. Gas & Elec. Co.*, 28 Okla. 356, 114 Pac. 1096; *Holcomb v. C., R. I. & P. Ry. Co.*, 27 Okla. 667, 112 Pac. 1023; *Atwater v. Hassett*, 27 Okla. 292, 111 Pac. 802; *State ex rel. v. Hooker*, 22 Okla. 712, 98 Pac. 964; *In re County Commissioners*, 22 Okla. 435, 98 Pac. 557; *In re Menefee*, 22 Okla. 365, 97 Pac. 1014; *Noble State Bank v. Haskell*, 22 Okla. 48, 97 Pac. 338; *Lindsay v. U. S. Savings & Loan Association*, 120 Ala. 174, 24 South. 171, 42 L. R. A. 783.

Section 57, art. 5, Const., *supra,* has reference only to the body of the bill, and not to the title. A case involving this proposition was decided by the Supreme Court of Tennessee in

*Mayor and Aldermen of Knoxville v. Gass,* 104 S. W. 1084. Syllabus I reads:

"Const. art. 2, sec. 17, providing that no bill shall embrace more than one subject, which must be expressed in the title. does not apply to the title, but to the body of the bill, and it is no objection to a bill that the caption is broader than the enacting part, or covers or may be construed to cover other subjects, if the real subject of legislation is therein expressed."

In *Cannon v. Mathes,* 8 Heisk. 519 (Tenn.), the same court, quoting Cooley on Const. Limitations, says:

" 'The generality of the title is no objection to it, so long as it may not be made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection.' "

See, also, *State ex rel. v. Hamby,* 114 Tenn. 364, 84 S. W. 622.

It appears that the most that can be said against the Oklahoma act, *supra,* is that the title is broader than the enacting part and covers or might be construed to cover another subject; that is, the licensing of vendors, but by a careful examination of the body of the bill it is easily to be determined that it relates to only such things as pertain to the practice of medicine. If no reference had been made to vendors in the title that section of the act which relates to vendors of medicine and medical appliances could have been properly included in the measure, because such a provision is referable and cognate to the subject expressed in the title and constitutes only a part of a complete enactment as a complement to the main thought therein expressed. This being true, the fact that the word "vendors" was not followed by the words "medicine and medical appliances" was immaterial, because the title would have been sufficient without any reference to vendors whatever. No attempt is made by the act to legislate as to vendors other than those who sell medicines and medical appliances, and no such intent can be deducted from the measure.

The Supreme Court of the United States, in the case of *Montclair v. Ramsdal,* 107 U. S. 147, in considering a constitutional provision of New Jersey which provided that every law

should embrace but one subject which should be expressed in the title, said:

"The purpose of this constitutional provision was declared by the Supreme Court of New Jersey in *State v. Town of Union,* 33 N. J. L. 350, to be 'to prevent surprise upon legislators by the passage of bills, the object of which is not indicated by their titles, and also to prevent the combination of two or more distinct and unconnected matters in the same bill.' Further the court said: 'It is not intended to prohibit the uniting in one bill of any number of provisions having one general object fairly indicated by its title. The unity of the object must be sought in the end which the legislative act proposes to accomplish. The degree of particularity which must be used in the title of an act rests in legislative discretion, and is not defined by the Constitution. There are many cases where the object might with great propriety be more specifically stated, yet, the generality of the title will not be fatal to the act, if by fair intendment it can be connected with it.' "

See, also, *McGlone v. Womack,* 129 Ky. 274, 111 S. W. 688, 17 L. R. A. (N. S.) 855.

The title of the act under consideration by the Kentucky court in this latter case was as follows: "An act to promote the sheep industry and to provide a tax on dogs." It was urged before that court that the act was inimical to the constitutional provision requiring laws to relate to only one subject, which should be clearly expressed in the title. Upon that point the court said:

"* * * We do not agree that the title before us relates to two subjects. The subject-matter of the act is the promotion of the sheep industry and this is to be accomplished by the imposition of a tax on dogs. No other attempt to promote the sheep industry is indicated by any provision in the act taken as a whole. It may be that the title to the act is rather awkwardly expressed. What it really means is that it is an act to promote the sheep industry by providing a tax on dogs, and when thus read, all duality disappears."

The similarity of the title to our medical practices act may clearly be seen by comparison.

In *State v. Boardnax* (Mo.) 128 S. W. 177, the Missouri Supreme Court, in discussing a similar constitutional provision, said:

"Directing our attention to the insistence of counsel for appellant that this act is a revenue measure and its validity must be tested by the taxing power, it is sufficient to say in our opinion that the test of the validity of this act is not to be applied to the usual taxing power in the imposition of a direct or property tax in any of the forms in which they are ordinarily imposed. Manifestly the act does not provide a direct or property tax in any form whatever, but simply provides for an excise or stamp tax on the right, privilege, and occupation of buying or selling shares of stocks, or bonds of any corporation, or petroleum, cotton, grain, provisions, or other commodities, either on margins or otherwise, where the same is not at the time actually paid for and delivered. As was said in *Nicol v. Ames,* 173 U. S. 509 (19 Sup. Ct. 522, 43 L. Ed. 786), where a tax of this character was in judgment before that court, that 'the tax is, in effect, a duty or excise laid upon the privilege, opportunity, or facility offered at boards of trade or exchanges for the transaction of the business mentioned in the act. It is not a tax upon the business itself which is so transacted, but is a duty upon the facilities made use of and actually employed in the transaction of the business, and separate and apart from the business itself. It is not a tax upon the members of the exchange nor upon the membership therein, nor is it a tax upon sales generally. The act limits the tax to sales at any exchange or board of trade, or other similar place, and its fair meaning is to impose a duty upon those privileges or facilities which are there found and made use of in the sale at such place of any product or merchandise.' "

It is a well-settled rule, recognized by all the courts, that where a statute is subject to two constructions, the one which will sustain its validity must be adopted, and this rule is equally applicable to the interpretation of titles to legislative enactments. *Memphis St. Ry. Co. v. Byrne,* 119 Tenn. 278, 104 S. W. 460. It is also well settled that a liberal construction should be applied to the acts of the Legislature in determining whether or not they violate the constitutional provisions, and courts will not pronounce a statute unconstitutional unless it clearly appears to be so. Both the legislative enactment and the constitutional provision are to be liberally construed with a view of sustaining the action of the Legislature.

In *State v. Coyle,* 7 Okla. Cr. 50. 122 Pac. 243, we said:

"Every legislative act is presumed to be constitutional and the courts should not declare an act to be unconstitutional unless it is clearly so. If there is a doubt, the express will of the Legislature should be sustained."

See, also, *Memphis St. Ry. Co. v. Byrne,* 119 Tenn. 278, 104 S. W. 460; *Joy et al. v. City of Terrell* (Tex.) 138 S. W. 213; *State v. Price,* 229 Mo. 670, 129 S. W. 650.

In *State ex rel. v. Wiethaupt.* 231 Mo. 449, 133 S. W. 329, in syllabus I, it is said:

"The purpose of the Constitution * * * providing that no bill shall contain more than one subject, which shall be expressed in its title, is to prevent the public and the members of the Legislature from being misled as to the contents of a bill, and where the words in the title do not mislead as to what the bill contains, and they are not designed as a cover to incongruous legislation, the title is sufficient."

For a general discussion of the principle, see body of the opinion.

The Supreme Court of California, in the case of *People v. Sacremento Drainage District,* 155 Cal. 373, 103 Pac. 207, said:

"The purpose of Const. * * * declaring that every act shall embrace but one subject, which shall be expressed in its title, was not to hamper legislation, but to check and prevent deception therein."

In *State v. Kolsem* (Ind.) 14 L. R. A. 566, the Supreme Court of Indiana, discussing a similar question, said:

"If the title covers a general subject, the act is valid, no matter how minutely it may go into details germane to that subject."

See, also, *Evers v. Hudson,* 36 Mont. 135, 9 Pac. 462.

The Supreme Court of Oregon in *State v. Miller,* 54 Ore. 381, 103 Pac. 519, held that a provision in an amendment to the act providing a board of pharmacy and the registration of pharmacists and regulating the sale of poisons which provided for licensing itinerant vendors of drugs did not violate the section of the Constitution requiring every act to embrace one subject, which must be expressed in the title. There are many cases which support this doctrine. The constitutions of practically all the states prohibit the passage of laws pertaining to

more than one subject-matter, and these provisions all intend to prevent the evils of omnibus bills and surreptitious legislation. The restrictions requiring the subject of an act to be expressed in its title should be reasonably construed, considering substance rather than form and requiring the expression of the title of the general object, but not the details or incidents. See 36 Cyc. 1017-20.

It is next contended that the medical practices act is a revenue measure and that it did not originate in the House of Representatives and was not passed more than five days prior to the adjournment, and for that reason is in conflict with section 33, art. 5, *supra.* This contention is without merit. The medical practices act is not a revenue measure within the meaning of said sections of the Constitution. Revenue laws, in the contemplation of this section of the Constitution, are those only whose principal purpose is the raising of revenue, and not those under which revenue may incidentally arise. See *Anderson v. Ritterbush,* 22 Okla. 761, 98 Pac. 1002. The authorities on this point are collated and discussed at great length by our Supreme Court in an opinion prepared by Justice Kane in the *Anderson v. Ritterbush* case, *supra.* This opinion by the Supreme Court completely answers the contention of counsel for petitioner.

It is next contended that the act in question is in violation of section 20, art. 10, Constitution of Oklahoma. This section of the Constitution is as follows:

"The Legislature shall not impose any taxes for the purpose of any county, city or town or other municipal corporations, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect taxes."

The particular portion of the statute in question which is objected to as in violation of the above constitutional provision is as follows:

"Said sum shall be paid to the county clerk, who shall pay the same over to the county treasurer for the use of the county road and bridge fund of said county."

This identical question was determined adversely to the contention of petitioner by the Supreme Court of Oklahoma in *Thurston, County Treasurer, v. Caldwell et al.,* 40 Okla. 206, 137 Pac. 683. The court, in that opinion, among other things, said:

"Section 20, art. 10, Williams' Ann. Const. Okla., which provides, 'The Legislature shall not impose taxes for the pur- pose of any county, city, town or other municipal. corporation, but may, by general laws, confer on the proper authorities thereof, respectively, the power to assess and collect such taxes,' applies to purely municipal affairs, and does not constitute a limitation upon the power of the Legislature of the state to impose taxes for purposes which, although of a municipal character, the state has a sovereign interest in, such as taxation for police protection, for streets, highways, and bridges, for the purpose of establish- ing and maintaining a public school system," etc.

See, also, *Atchison, T. & S. F. Ry. Co. v. State,* 28 Okla. 94.

The reasoning, argument, and authorities cited in these two opinions of the Supreme Court of our own state are sufficient answer to this contention.

Counsel further contend that because the license fee is a sum greater than the cost of issuing same, the medical practices act in question becomes a revenue measure in so far as it affects vendors and peddlers of medicines and medical appli- ances. The license provided is an annual fee of $50. This identical question was before the Supreme Court of Minnesota in the case of *State v. Jensen,* 93 Minn. 88, 100 N. W. 644. The provision before the court of Minnesota required the pay- ment of a license fee of $125. It was contended before that court that the act was void for the same reasons that coun- sel urge here—that is, that the law was a revenue measure and not the reasonable exercise of police power. The court in their opinion, among other things, said:

"The defendant urges that the license fee of $125 is un- reasonable in amount and a tax for revenue, and that therefore the ordinance is void. The authority given to the city council by the charter of the city to license and regulate peddlers, was granted for police, not revenue purposes, but the fact that the

city incidentally derives a revenue from the exercise of the power does not affect the validity of the ordinance. In the exercise of the power granted, a wide discretion is allowed the city council, and unless the license fee is manifestly unreasonable the ordinance is not void. The business of peddling is a legitimate one, but, unless regulated and wisely policed, it is liable to become a nuisance, especially in the large cities of the state. Therefore, the amount of the license fee is not limited to an amount which will cover the expense of issuing it, but it may include the reasonable cost of policing the business, and such further reasonable sum as the council may deem necessary in order to secure the orderly pursuit of the business, by excluding therefrom irresponsible and disorderly persons. *City of Mankato v. Fowler,* 32 Minn. 364, 20 N. W. 361; *In re White,* 43 Minn. 250, 45 N. W. 232; *City of Duluth v. Krupp,* 46 Minn. 435, 49 N. W. 235; *City of Duluth v. Marsh,* 71 Minn. 248, 73 N. W. 962.

"In the second case cited it was held that a license fee of $3 per day for peddlers was not unreasonable, and in the third one cited it was held that a license fee of $100 a year for peddling in the city of Duluth was not unreasonable. We hold that the license fee of $125 a year for peddling in the city of Minneapolis is not so manifestly unreasonable as to justify the court in holding that the ordinance is void."

Counsel assume that because the law in question produces revenue, this stamps it as a revenue measure in contemplattion of the constitutional provision, *supra.* Revenue is a mere incident to the law, and not the primary purpose of the law. This is clearly apparent to an unbiased mind. If the $125 license fee imposed by a similar law under a similar constitutional provision in the state of Minnesota does not have the effect of converting the act into a revenue measure in that state, then the $50 license fee as imposed by the law in this state, enacted by the Legislature within the reasonable exercise of the police power, certainly does not convert the act into a revenue measure. We are not inclined to twist a construction out of these enactments that will thwart the will of the people expressed through the Legislature, and especially so when such construction is unsupported by reason or authority. The Legislature of Iowa enacted a law almost identical with the medical practices act

of Oklahoma, except that in Iowa $100 was imposed instead of $50. In the case of *State v. Wheelock,* 95 Iowa, 577, 64 N. W. 620, 58 Am. St. Rep. 442, the question of whether or not this section was a revenue measure or a reasonable police provision arose. The court in its opinion, among other things, says:

"The primary object of the act is not to derive a revenue for the use of the state, but in a large part at least to protect its citizens against solicitations and harmful practices or irresponsible and unknown traveling vendors of drugs and other articles intended for the treatment of diseases or injury, who in carrying on their business publicly profess to cure or treat diseases, injuries or deformities and thus promote the sale of their wares to the credulous. The prohibited act may be committed without any actual sale. *State v. Blair,* 60 N. W. 486. That the enactment of the law in question was within the police power of the state is affirmed in principle by numerous authorities, some of which are of long standing and cannot now be successfully questioned. * * * The amount of the license fee required by the statutes under consideration is not excessive, and the regulations adopted by them are reasonable. The sale of drugs, nostrums, and other articles manufactured in another state and brought into this state, whether brought into this state in original packages or otherwise, is not prohibited; but such medicines may be brought into the state and sold freely. Their importation and sale are not in any manner prohibited. But if its owner select as their agent an itinerant who, to promote sales, publicly professes to cure and treat diseases, injuries and deformities, it is proper that some evidence and guaranty of his responsibility be required. * * * The statutes which apply to such sales are not in any sense regulations of interstate commerce, but a reasonable exercise of the police power of the state which may be applied as well to articles of interstate commerce in the hands of a vendor, and offered for sale in the original package, as to articles produced in the state."

From these authorities it is clearly apparent that a reasonable license fee imposed under the police power to regulate is not invalid because it produces revenue. See *Johnson v. Philadelphia,* 60 Pa. 445; *Ex parte Gregory,* 20 Tex. App. 210, 54 Am. Rep. 516.

Counsel complain that the law requiring the license fee under the statute in question is invalid by reason of the fact that the

fees provided for are to be used for other purposes, and not for the purpose of enforcing the law under which they are imposed. This contention is without merit. See *Littlefield v. State,* 42 Neb. 223, 28 L. R. A. 588.

The constitutionality of the medical practices act of Oklahoma has not been directly discussed by this court, although it has been recognized in *Coulson v. State,* 8 Okla. Cr. 403, 127 Pac. 1090; *Gobin v. State,* 9 Okla. Cr. 201, 131 Pac. 546; *Wilson v. State,* 8 Okla. Cr. 493, 129 Pac. 82.

We are of opinion that the act in question is a valid law, enacted within the reasonable exercise of the police power of the state, and a wholesome provision which infringes on no constitutional provision of Oklahoma or of the United States. From the foregoing conclusion it is seen that the conviction of the petitioner was had under a valid law and in a court of competent jurisdiction. It therefore follows that the writ should be discharged and the prisoner remanded to the custody of the sheriff of Payne county, to be dealt with as the law provides.

DOYLE P. J., and FURMAN, J., concur.