### J. T. REEVES v. STATE.

No. A-5844.   Opinion Filed Feb. 19, 1927.
(253 Pac. 510.)

Brett & Brett, Matson & Mathers, and H. A. Hicks, for plaintiff in error.

Geo. F. Short, Atty. Gen., Leverett Edwards, Asst. Atty. Gen., and Sigler & Jackson, for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the county court of Carter county on a charge of practicing medicine without a license and was sentenced to pay a fine of $250.

The information is drawn under section 12, c. 59, Session Laws 1923, the charging part of which reads:

"That he, the said John T. Reeves, defendant, on the day and the year last aforesaid, in the county and state aforesaid being then and there not in the lawful possession of an unrevoked license or certificate, issued and executed to him by the board of medical examiners of the state of Oklahoma, authorizing him, the said John T.

Reeves, to practice medicine and surgery within the state of Oklahoma, did knowingly, willfully, wrongfully, and unlawfully practice medicine; by knowingly, unlawfully and wrongfully appending to his name the letters 'Dr.,' 'M. D.,' 'Specialist,' 'Combanathic,' thereby holding himself out and representing himself to the public as a physician. * * *"

The evidence, while brief, substantially sustains the charge. We deem it unnecessary to set out the substance of the evidence further than to say that it shows defendant, at the time charged, upon a sign over the door of his place of business, appended to his name the letters, "Dr.," as an abbreviation for "Doctor," and followed it by the words, "Specialist in Chronic Diseases," thereby representing himself to be a physician, not having at the time a license authorizing him to practice medicine. Defendant contends that the entire act is unconstitutional and void. Further, that if the act should be upheld, that section 12 is invalid as based on a conclusive or an unreasonable presumption not within the power of the Legislature to enact.

Under his first assignment, defendant asserts that said chapter 59 violates section 55, art. 5, of the Constitution, which forbids the expenditure of any money of the state except in pursuance of an appropriation made within 2½ years of the passage of the appropriation act. That said chapter 59 is similar to and falls squarely within the inhibition announced by this court in the case of Ex parte Pope, 33 Okla. Cr. 5, 242 P. 290. That by the terms of said act the medical board may expend funds belonging to the state without any valid appropriation therefor and without the checks and balances required by the Constitution.

In reference to the Medical Practice Act, generally, it is well settled that, by virtue of the wide authority of the police power inherent in the state, the Legislature may

enact reasonable regulations for the conservation and protection of the public health. 30 Cyc. pp. 1547, 1548; 21 R. C. L. 368; Parks v. State, 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190; State v. Vandersluis, 42 Minn. 129, 43 N. W. 786, 6 L. R. A. 119; State v. Edmunds, 127 Iowa, 333, 101 N. W. 431; Smith v. People, 51 Colo. 270, 117 P. 612, 36 L. R. A. (N. S.) 158; Little v. State, 60 Neb. 749, 84 N. W. 248, 51 L. R. A. 717; Dent v. State of W. Va., 129 U. S. 114, 9 S. Ct. 231, 32 L. Ed. 623; State v. Corwin, 151 Iowa, 420, 131 N. W. 659.

The following cases from this court treat the Medical Practice Act as valid; Coulson v. State, 8 Okla. Cr. 403, 127 P. 1090; Wilson v. State, 8 Okla. Cr. 493, 129 P. 82; Gobin v. State, 9 Okla. Cr. 201, 131 P. 546, 44 L. R. A. (N. S.) 1089; Ex parte Ambler, 11 Okla. Cr. 449, 148 P. 1061.

In testing the constitutionality of an act of the Legislature, every presumption in favor of the constitutionality must be indulged by the court, and an act will be upheld unless its conflict with the Constitution is clear and certain. Ex parte Hunnicutt, 7 Okla. Cr. 213, 123 P. 179; Stout v. State ex rel., 36 Okla. 744, 130 P. 553, 45 L. R. A. (N. S.) 884, Ann. Cas. 1916 E, 858; Dickinson v. Perry, 75 Okla. 25, 181 P. 504; Leach v. State, 17 Okla. Cr. 322, 188 P. 118.

This rule is particularly applicable and the presumption is especially strong where there has been a long acquiescence and the provisions challenged have been treated as valid, or where great injury would result from declaring a statute void. 12 C. J. pp. 798, 799, § 223. The Medical Practice Act in some form was in force in Oklahoma Territory prior to statehood and at all times since statehood. Certainly, great injury would follow if this act should be held invalid. However, a comparison of the real estate act held un-

constitutional in the Pope Case and the Medical Practice Act shows a very wide difference. The real estate act did not provide for any checks and balances by the state treasurer or auditor. The real estate board had its own depository, other than the state treasurer. It was its own collector, manager, purchaser, auditor, and disburser, limited only by the amount of money it could get. Section 2, c. 205, Session Laws 1923. Under section 31 of this act, the funds collected are paid to the state treasurer. The act is broad, and the wisdom of managing this fund and disbursing it in the manner provided may be criticized as bad policy or poor business methods; the act does not fall squarely within the rule announced in the Pope Case. That case lays down the rule as extreme as this court is prepared to go. We do not deem it necessary to pass on the constitutionality of section 31, for even if the manner of disbursing these funds should be held in violation of the Constitution, the other parts of the act would not ipso facto be unconstitutional. Section 34 contains the usual partial invalidity clause, which provides that, in the event any of the provisions of the act should be held unconstitutional, it shall not affect the enforcement of the other provisions thereof.

It is a well-recognized principle of statutory construction that a statute may, for constitutional or other reasons, be in part valid and in part invalid, and, if the invalid portion can be eliminated without disturbing or impairing the valid portion, the valid portion will be upheld and the invalid portion stricken. Missel v. State, 33 Okla. Cr. 376, 244 P. 463; Postelwait v. State, 28 Okla. Cr. 17, 228 P. 789; Dies v. Bank, etc., 100 Okla. 205, 229 Pac. 474; In re Commissioners, etc., 22 Okla. 435, 98 P. 557; Pioneer Tel. & Teleg. Co. v. State, 40 Okla. 417, 138 P. 1033; Parwal et al. v. State, 71 Okla. 121, 175 P. 514.

It is next argued that section 12 attempts to create a conclusive presumption of guilt of unlawfully practicing medicine for any one without a license, who shall use the prohibited terms in connection with his name, without any proof that such person ever treated or attempted to treat disease. That a statute which undertakes to make evidence of any fact conclusive proof of guilt is invalid, citing Ex parte Wilson, 6 Okla. Cr. 451, 119 P. 596, and Caffee v. State, 11 Okla. Cr. 485, 148 P. 680.

Or if it should be held that the statute creates merely a prima facie presumption, it is arbitrary and unreasonable and not within the power of the Legislature to enact, citing Ex parte Smith, 24 Okla. Cr. 415, 218 P. 708, and Simpkins v. State, 35 Okla. Cr. 143, 249 P. 168.

The section of the statute in question is not unique, but the substance of it is found in the statutes of various states, and the subject-matter has been considered by the courts many times. Our attention has not been called to any case in which a statute of similar import has been held invalid. This section appears to be an expression of the legislative intent to broaden the definition of the words, "practice of medicine," and, in addition to the generally accepted meaning, to have it include other acts not generally contained in the meaning of that term. It is said that the state has the right to determine and define what constitutes the practice of medicine within the meaning of the legislative act. And so long as the statutory definition mentions acts which in any substantial sense amount to a practice of medicine, the act will be upheld and the assuming to practice by affixing or prefixing signs or appellations in a medical sense to the name is sufficient to constitute the offense. 30 Cyc. 1562, 1563, IV, states the rule thus:

"In many states it is provided that any person shall be held as practicing medicine, within the meaning of a statute prohibiting the practice of medicine without a license, who shall publicly profess to cure or heal, or hold himself out as a physician, and assume the duties, or who shall prefix the title 'doctor' or 'professor,' or append the letters 'M. D.,' to his name. A mere public profession of any ability to heal will not subject one to the penalities of the law. Such profession must be made under circumstances as to indicate that it is made with a view of undertaking to cure the afflicted. But proof of actual treatment is not exacted in all cases. * * *"

In the case of State v. Yegge, 19 S. D. 234, 103 N. W. 17, 69 L. R. A. 504, 9 Ann. Cas. 202, it was said:

"Chapter 176, p. 202, of the Laws of 1903, provides for creating a board of medical examiners, defines their duties, empowers them to grant licenses to qualified applicants, and prescribes penalties for practicing without such a license. Section 21 provides as follows: 'When a person shall append or prefix the letters, M. B. or M. D. or the title Dr. or Doctor or any other sign or appellation in a medical sense to his or her name or shall profess publicly to be a physician or surgeon, * * * (he or she) shall be regarded as practicing within the meaning of this act.' It will be observed that it is provided by the above section that: 'When a person shall append or prefix the letters M. B. or M. D. or the title Dr. or Doctor or any other sign or appellation in a medical sense to his or her name or shall profess publicly to be a physician or surgeon, * * * (he or she) shall be regarded as practicing within the meaning of this act.' The evidence seems to be uncontradicted that the plaintiff in error did, upon a sign in front of his office, and in the notice published, prefix to his name the letters 'Dr.' and it is quite clear from the evidence that they were used in a medical sense, and we are of the opinion that the jury were fully justified in so regarding them. The Legislature evidently intended, in enacting the law, to prevent persons not properly educated in the science of medicine from assuming to act as a physician, and to protect the public, and it has deemed it proper that every person assuming to act as a physi-

cian or surgeon should be properly licensed. In carrying into effect this law, it was competent for the Legislature to define, as it has assumed to do in section 21, what evidence shall be deemed sufficient to constitute a practitioner within the meaning of the act."

In the case of State v. Crombie, 107 Minn. 171, 119 N. W. 660, the opinion uses this language:

"The contention of the defendant is that the provisions of the statute referred to are unconstitutional, because they make the use of the letters 'D. D. S.' conclusive evidence that the person so using them is practicing dentistry in this state, and, further, that they are in conflict with sections 3 and 7 of article 1 of our state Constitution, which guarantee the liberty of speech and press, and that no person shall be deprived of life, liberty, or property without due process of law, and also that they violate the Fourteenth Amendment to the Constitution of the United States. The provision of the statute to the effect that a person who does the acts therein specified 'shall be said to be practicing dentistry' is in substance the same as one found in Rev. Laws 1905, § 2300, relating to the practice of medicine, which declares that a person shall be regarded as practicing medicine, within the meaning of the act, who shall append to his name the letters 'M. D.' This last-named provision was sustained, as a valid exercise of the police power, in State v. Oredson, 96 Minn. 509, 105 N. W. 188, for the reason as stated by Jaggard, J., that 'it was designed to secure the public in whole and in part from quacks, humbugs, and charlatans masquerading under the venerable and honorable titles of surgeons, physicians, and doctors, and to protect the public in a just reliance upon the one using these titles as a man of proper education and sufficiently trained in the sciences involved.' * * *"

See, also, 21 R. C. L. p. 368, § 16; Parks v. State, 159 Ind. 211, 64 N. E. 862, 59 L. R. A. 190, supra; Foo Lun v. State, 84 Ark. 475, 84 S. W. 946; State v. Oredson, 96 Minn. 509, 105 N. W. 188; Territory v. Newman, 13 N. M. 98, 79 P. 706, 813, 68 L. R. A. 783.

We are of the opinion that the act in question is valid as within a reasonable exercise of the police power and is not in conflict with any constitutional provision of the state.

The judgment is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.