## ROY PETERS v. STATE.

No. A-8715.   June 28, 1934.
(34 Pac. [2d] 286.)

J. F. Murray and Henry S. Johnston, for plaintiff in error.

J. Berry King, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter referred to as defendant, was convicted in the county court of Kay county, of violation of article 3, chapter 24, Oklahoma Statutes 1931, as amended by chapter 60, Session Laws 1933, prohibiting the operation of barber shops or employment therein without first having submitted to a physical examination by the proper medical authorities, obtaining a license, and paying the fee fixed by said law, and his punishment fixed at a fine of $1 and the costs of the action.

In the county court a jury was waived and the cause submitted to the court on an agreed statement of facts.

Defendant contends the act under which he was prosecuted is unconstitutional:

1. In that it creates a department of state and seeks to vest in it power to collect an undetermined amount of money from the barbers of the state and to pay out the same as it sees fit, without any check or balance on said fund and without depositing same with the state treasurer, to be paid out as required by law.

2. That said act is discriminatory because it applies only to barbers operating in incorporated towns.

Section 1 of the act (O. S. 1931, § 4325) creates a State Board of Barber Examiners, consisting of four members, three of whom must be learned in the barber trade and the fourth a medical doctor appointed by the Commissioner of Health, the medical member of the board having no voice in the organization of the board (section 3 [O. S. 1931, § 4327]).

Section 4 (O. S. 1931, § 4328) requires each member of the board to take the constitutional oath of office and in addition to make an oath that he has been engaged in

the active and continuous practice of the barber trade in this state for a period of more than five years next preceding his appointment. The act also provides for the election of a president, a secretary, and a treasurer of the board, and requires the treasurer to give a bond in the sum of $10,000 (section 5 [O. S. 1931, § 4329]).

Section 6 (O. S. 1931, § 4330) requires the board to keep a record of its proceedings.

Section 7 (O. S. 1931, § 4331) provides for regular meetings every three months to consider applications.

Section 9 (O. S. 1931, § 4333), under which defendant was convicted, provides:

"Any persons practicing the trade of barber or apprentice barber, without having at the time a valid unrevoked certificate, as provided in this act, shall be deemed guilty of a misdemeanor, and shall, upon conviction, be fined not to exceed one hundred dollars ($100.00), and each day's practice shall constitute a separate offense. All fines under the provisions of this section shall be paid into a common school fund of the county wherein the conviction is had."

Section 13 (St. 1931, § 4337), as amended by chapter 60, § 3, Session Laws 1933, provides for the issuing of certificates upon examination, and requires payment of a $2 fee after the applicant has passed the required medical examination. The act further provides (section 25 [O. S. 1931, § 4349, as amended by Laws 1933, c. 60, §8]):

"It is hereby expressly provided that the provisions of this act shall not apply to barber shops not in incorporated cities and towns of this state."

The act further requires the board to submit an annual report to the Governor, containing a full statement of its receipts and expenditures and a review of its work,

and requires the treasurer to pay into the general fund of the state 10 per cent. of the gross fees charged, collected, and received by the board.

Section 28 (O. S. 1931, § 4352) is a saving clause which provides that if any part of the act is declared unconstitutional, it shall not affect the other parts of the act which may be valid.

The primary rule of construction of statutes to be followed in considering the objections to the constitutionality of this law is that which declares the constitutionality of a statute is the strongest presumption known to the courts and that no law will be declared unconstitutional unless its unconstitutionality clearly appears beyond any reasonable doubt. State v. Wheatley, 20 Okla. Cr. 28, 200 Pac. 1004; Bishop v. City of Tulsa, 21 Okla. Cr. 457, 209 Pac. 228, 27 A. L. R. 1008.

Under defendant's first proposition it is contended the act violates section 55, art. 5, of the state Constitution, in that it does not require the money collected to be paid to the State Treasurer and after appropriation, paid out by him upon proper warrants, but makes the board sole custodian of the funds collected and gives it authority to pay out such funds as it sees fit, without any supervision or interference of any kind by any official of the state.

Section 55, art. 5, of the Constitution of Oklahoma, provides:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall

distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

The State Barber Act provides that one of its members shall be elected treasurer of the board, shall give bond of $10,000 to be approved by the Governor and filed with the Secretary of State, and shall receive and care for all money paid to him by the secretary and pay out the same upon written orders of the secretary, countersigned by the president (section 5 [O. S. 1931, § 4329]). Here, then, we have the creation of a treasury for this special fund; a bonding of the officer who is made the custodian of the fund; and the creation of a form of order, amounting to a warrant, to pay such funds from its treasury.

We are at once confronted with the question: Does section 55, article 5, require all funds of this character to be paid into the state treasury, or does the Legislature have constitutional authority to deal with such funds and provide for their expenditure in the manner set forth in this act?

It appears from an examination of the Constitution that the framers realized there would be funds of the state the Legislature would have to deal with that would not, and under some circumstances could not, necessarily be deposited in the state treasury. Therefore, in order to safeguard such funds, section 55, article 5, provided as to them that before they might be expended there must be an appropriation from the fund, not from the state treasury.

The act creating the State Board of Barber Examiners, together with chapter 60, Session Laws 1933, appropriates for the purpose of the act itself 90 per cent. of the gross receipts obtained from fees collected for exami-

nations, issuance of registration certificates, etc., and requires the other 10 per cent. to be paid to the State Treasurer. The amount appropriated may be determined from the amount collected.

In Edwards v. Childers, State Auditor, et al., 102 Okla. 158, 228 Pac. 472, 473, the Supreme Court held:

"The appropriation of money is the setting it apart formally or officially for a special use or purpose, and, where that is done by the Legislature in clear and unequivocal terms in a duly enacted law, it is an 'appropriation.' "

In Reeves v. State, 36 Okla. Cr. 186, 253 Pac. 510, this court had under consideration the constitutionality of the Medical Practice Act (Laws 1923, c. 59), and there held a statute similar to the one in controversy in the case at bar as within the legislative power and therefore constitutional.

In State Board of Dental Examiners v. Pollock, 125 Okla. 170, 256 Pac. 927, the Dental Act (Comp. St. 1921, §§8701-8727), was challenged on 11 different grounds, the last being that the act was unconstitutional because no fund had been specifically appropriated by the Legislature for the operation and maintenance of this board. The Supreme Court held this objection not tenable and the act constitutional.

Certainly the Legislature, under the police power of the state, had authority to regulate the practice of barbering in this state and to place certain safeguards around such practice, and to provide for the licensing and physical examination of those engaged in such practice, to prevent the spread of contagious and infectious diseases. The penal provisions of this act are clearly within the scope of the state's police power.

Defendant relies upon Ex parte Pope, 33 Okla. Cr. 5, 242 Pac. 290, where this court held the act creating the State Real Estate Board unconstitutional and void. Drastic distinctions, however, may be noted between the act of the Legislature of 1925 (Laws 1925, c. 129) and the act here under consideration. The Real Estate Commission Act did not fix the maximum limit of the salaries of the members of the commission, but left them wholly to the discretion of the commission. In this act the maximum salary of each member of the Board of Barber Examiners is fixed at a definite amount. The Real Estate Act provided for no treasurer and created no special and distinct fund; whereas the act in the case at bar creates the office of treasurer, requires a bond, prohibits the expenditure of the funds except upon properly drawn orders or warrants on this treasurer. The Real Estate Act made no provision for reports to the Governor or an accounting to any department other than themselves, and made no requirement that any part of the funds collected should be paid into the state treasury, whereas the Barber Act requires full, itemized reports to be filed annually with the Governor and Secretary of State, requires an accounting of all funds received and a showing of what the expenditures were and to whom they were made, and the payment of 10 per cent. of all funds collected into the general fund of the state treasury.

Ex parte Pope, supra, is not in point in this controversy because none of the grounds upon which the Real Estate Act was declared unconstitutional exist in this act.

Under the authorities heretofore cited the act is within the police power of the state, makes a valid appropriation of the funds collected, and authorizes the board to expend the same according to the provisions of the act.

It is next contended the act is unconstitutional because it applies only to barbers operating in incorporated towns, and therefore discriminates against them and in favor of barbers in unincorporated towns and communities.

Counsel for defendant cite no authorities in support of this contention.

Under the act in question the Legislature has seen fit to place the barber shops of this state in two classes: (a) Those in cities and incorporated towns; (b) those not in cities and incorporated towns. Did such a classification destroy uniformity of operation of the law? The law acts uniformly throughout the state on all barber shops within class A and likewise operates alike on all those barber shops coming within class B.

Uniformity of operation as used in section 59, art. 5, Oklahoma Constitution, requires that laws shall have uniformity of operation throughout the state, but does not require "universality of operation"; the former relating to similarity of conditions affecting subjects or localities of the state that are appropriately classified; the latter relating to the whole and every part of the state.

For a law to be general in its nature and to have a uniform operation, it is not necessary that it shall operate upon every person and every locality of the state. Burks v. Walker, 25 Okla. 353, 109 Pac. 544; Pointer v. Town of Chelsea, 125 Okla. 278, 257 Pac. 785; Hover v. Oklahoma City, 133 Okla. 71, 271 Pac. 162; Butcher Packing Co. v. Langston, 154 Okla. 280, 7 Pac. (2d) 631.

In Barbier v. Connolly, 113 U. S. 27, 5 S. Ct. 357, 360, 28 L. Ed. 923, the Supreme Court of the United States said:

"Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

The highest courts of other states have held a barber act similar to the one in controversy here constitutional and within the police power of the state. Cooper v. Rollins, 152 Ga. 588, 110 S. E. 726, 20 A. L. R. 1105; Ex parte Lucas, 160 Mo. 218, 61 S. W. 218, 219.

These authorities cite numerous cases from other states.

Under these authorities there is no merit in defendant's contention that the act violates section 59, art. 5, of the Oklahoma Constitution.

No fundamental error appearing, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.