GREEN, ON BEHALF OF CITY OF COLUMBUS, *v.*
THOMAS, MAYOR, ET AL.

(Decided July 8, 1930.)

*Mr. W. H. Jones,* for relator.

*Mr. John Davies,* city attorney, *Mr. Gilbert Bettman,* attorney general, *Mr. E. C. Shively, Mr. L. F. Laylin,* and *Mr. Charles F. Ohl,* for defendants.

HORNBECK, J. This suit was instituted by the plaintiff, Fred F. Green, a taxpayer, to enjoin the defendants, James J. Thomas, mayor of the city of Columbus, and William H. Duffy, director of public service of the city of Columbus, from transferring certain real estate to the state of Ohio. The common pleas court denied the relief sought. The case comes into this court on appeal. We state the facts and determine the law as briefly as possible.

For many years the state of Ohio has contemplated the erection of a state office building. In April, 1925, the General Assembly passed an act providing for the creation of a State Building Commission. In March, 1929, the former act was amended by House Bill No. 17, 113 Ohio Laws, 57, which, in general terms, provided for the acquisition of a site and the construction thereon of a state office building, for the naming of a commission of five competent persons by the Governor, and for the procedure of the commission.

Section 3 of the act empowered the commission to:

"Acquire a site for a state office building  *  *  * directly opposite the state house grounds on Broad, Third, State or High street or may acquire a site outside of the area above set forth but conveniently located near the State Capitol in the City of Columbus, Ohio.  *  *  *

"If a site is selected the whole or part of which belongs to the city of Columbus, Ohio, said city of Columbus is hereby empowered to convey, transfer, assign, and deliver to the State of Ohio without cost any and all title or interest which it may have in and to any lands within the boundary lines of the site so selected. In such event the city of Columbus is likewise empowered to vacate any streets or public thoroughfares within such boundary and to open and establish new streets which, with the consent of the commission may be established through part of the land acquired by the commission."

Prior to the selection of the site known as the "Scioto River Site," a portion of which belonged to the city of Columbus, and under consideration in this case, the council of the city of Columbus passed a resolution of date August 2, 1929, which, after referring to House Bill No. 17 and the power granted the commission therein to acquire a site for the state office building, a part of which belonged to the city of Columbus, provided in part:

"That it is the sense of this council and it hereby expresses and declares its willingness and intention for and on behalf of said City of Columbus, should said Scioto River site be selected, to cause to be conveyed, transferred, assigned and delivered to the State of Ohio, without cost, any and all title or interest which it may have in and to any lands within

the boundary lines of said site. Said council further hereby declares its willingness in such an event to vacate any streets or public thoroughfares within such boundary and to open and establish new streets which with the consent of the Commission may be established through part of the land acquired by the commission, and further hereby declares its intention to cooperate in the fullest measure with said state office building commission to make such site available in accordance with any plans therefor which may be adopted by said Commission.

"Be it further resolved that the city clerk be and he is hereby authorized and directed to transmit to the State Office Building Commission a certified copy of this resolution."

According to the record, this resolution was brought to the attention of the State Office Building Commission, and conferences were had between its members and the mayor, the director of public service, and members of council of the city of Columbus respecting the selection of the river front site.

The commission adopted plans and specifications for the new building and took the proper legal steps to acquire by purchase all the necessary land for the site, excepting that which the city proposed to transfer under Ordinance No. 24-30.

It was contemplated that to meet the demands of the commission three strips of land belonging to the city of Columbus would be required, the total area of which is one-tenth of an acre, estimated to be of the value of $8,000. The action of the city council evidencing its purpose and intention to transfer these parcels of land was formally set forth in Ordi-

nance No. 24-30, enacted as of date January 13, 1930, which in so far as pertinent provides:

"Whereas, the State Office Building Commission heretofore appointed and qualified under the provisions of House Bill No. 17, passed by the 88th General Assembly, March 14, 1929, approved by the Governor April 6, 1929, and which went into effect July 7, 1929, has heretofore under the authority of said Act selected as the site for the erection and construction of a State Office Building, certain lots and land in the City of Columbus, Ohio, extending west from Front Street between Broad Street and Town Street in said City, which site so selected includes within its boundary line as a part of said site said parcels of land and real property of the City hereinafter described.

"Now, therefore, be it ordained by the Council of the City of Columbus:

"Section 1. That in consideration of the many and manifest benefits derived by the City of Columbus, Ohio, and by other property owned by it from the location of said State Office Building in the City of Columbus, and on the site therefor selected by the State Office Building Commission, and pursuant to the authority conferred upon the City of Columbus by said Act, there be conveyed and transferred by the City of Columbus to the State of Ohio by fee simple title, and without cost to the State of Ohio, the following described parcels of land and real property, and all of the title and interest to which the City of Columbus may have in and to the same, consisting in the aggregate of approximately ten one-hundredths of an acre, to wit: [Then follows a description of the real estate.]

"Section 2. That the Mayor and Director of Public Service of the City of Columbus be and they hereby are authorized and directed to execute and deliver to the State of Ohio, a deed in proper form conveying to the State of Ohio the above described real property."

The petition attacks the constitutionality of House Bill No. 17, the validity, legality, and sufficiency of Ordinance 24-30.

The claims of plaintiff are: First, that the city of Columbus is without power from any source to transfer the real estate described in the ordinance on the terms proposed; and, second, if it has the power, it has not observed the provisions of the statutes or its charter regulating and controlling the transfer of real estate by the city.

As suggested by counsel for plaintiff in his reply brief, counsel for defendants have taken different positions in oral argument and brief concerning the effect of House Bill No. 17.

Much time in oral argument and much space in the briefs have been devoted to a discussion of the power of the city of Columbus to make a deed of its lands to the state of Ohio under the conditions existent in this case.

The city of Columbus has by direct grant of the Constitution of the State of Ohio, Section 3, Article XVIII, authority to exercise all powers of "local self-government," and, likewise, by its charter, has expressed a purpose to assume all authority so granted. The only limitation on these powers is that they shall not be in conflict with "general laws."

It will be helpful to fix the character of the transaction which the city by Ordinance No. 24-30 pro-

poses to complete with the state of Ohio. Is it a sale or a donation? If a sale, both the charter and the statutes treat the subject, and admittedly the provisions of neither have been observed. If a donation, it is unauthorized by charter, statute, or Constitution.

The transaction, in our judgment, is not a sale because it lacks the element of pecuniary return by the state to the city as a consideration for the property to be deeded. It is not a donation, because there is a valuable consideration for the transfer. The adequacy of the consideration, we later discuss.

Sections 3631, 3698 and 3699, General Code, cover the subject of sale and donation of real estate and personal property, but do not relate to a transaction of the character involved in the instant suit.

There is, then, no conflict of general laws with the "power of local self-government" of the city of Columbus, which power is most comprehensive and flexible.

Whether or not from the express authority granted to the city by the Constitution it has implied power to consummate the transfer contemplated, we do not feel called upon to determine. The city of Columbus did not presume to act upon such authority, but based its Ordinance No. 24-30 squarely upon the express provisions of House Bill No. 17.

The legislative power of the state is vested in the General Assembly. The subject-matter of House Bill No. 17 is within the proper field of legislative consideration. In construing the Constitution of Ohio, if a power of legislation is not limited or denied, it may be said to exist. *Baker* v. *City of Cincinnati*, 11 Ohio St., 534. Both before and since adop-

tion of the Constitution of 1912 the General Assembly has exercised its prerogative to legislate respecting transfers of real estate and personal property from one political subdivision to another, and to the state. The legislature by statutory provisions has authorized municipalities to acquire and donate land to the state by deed in fee simple. Section 3631, General Code.

But it is claimed that House Bill No. 17 is in conflict with Section 26, Article II, of the Constitution of the State of Ohio, in that it does not have uniform operation throughout the state.

Inasmuch as the state office building is an adjunct to the state house, which by force of Section 1, Article XV, of the Constitution, is required to be located at the capitol, it follows that the subject-matter of the bill under consideration, viz., the land in and owned by the city of Columbus, and the conditions under which it may be transferred, is the only subject-matter within the state to which the act could apply, and therefore does not countervene the spirit of the constitutional provision intended to compel uniform operation of general laws.

House Bill No. 17 specifically authorizes the city of Columbus to deed the land under consideration to the state of Ohio "without cost." "Without cost," we believe, means without cost in money. Pursuant to this authority, the council of the city of Columbus has taken the necessary legal action to avail itself of the power so granted. If the city is receiving an adequate consideration other than money, the transfer may legally be completed under the direct holding of the Supreme Court of Ohio in the case of *City of Cleveland* v. *Public Library Board of City of*

*Cleveland,* 94 Ohio St., 311, 114 N. E., 247, and the inferential holding in *State, ex rel. Clemmer & Johnson Co.,* v. *Turner, Atty. Gen.,* 93 Ohio St., 379, 113 N. E., 327.

In *City of Cleveland* v. *Public Library Board, supra,* notwithstanding the limitations of Section 2, Article XII, of the Ohio Constitution, the Supreme Court recognizes the right of one political subdivision to transfer real or personal property, under statutory authority (Section 3711, General Code), to another for an adequate consideration other than money.

Is the consideration moving to the city of Columbus from the state of Ohio adequate?

The broad powers exercised by municipalities under legislative authority appear in the following quotation from 19 Ruling Case Law, 721:

"The reasonable use of public money for memorial halls, monuments, statues, gates or arch-ways, celebrations, the publication of town histories, parks, roads leading to points of fine natural scenery, decorations upon public buildings, or other public ornaments or embellishments, designed merely to promote the general welfare, either by providing for fresh air or recreation, or by educating the public taste, or by inspiring sentiments of patriotism, or of respect for the memory of worthy individuals, has received such general sanction that there can be no doubt that municipal corporations may be constitutionally authorized to expend money raised by taxation for such purposes. The trend of authority, in more recent years, has been in the direction of permitting municipalities a wider range in undertaking to promote the public welfare or enjoyment. Thus,

the appropriation of money for public concerts has been held to be proper. So, too, the erection of an auditorium has been regarded as properly falling within the purposes for which a municipal corporation may provide. Generally speaking, anything calculated to promote the education, the recreation or the pleasure of the public is to be included within the legitimate domain of public purposes, and on this ground it has even been held that authority to erect and conduct an opera house may be conferred upon a municipal corporation."

Columbus, like other cities, has conceived the plan of a civic center. The land to be used therefor lies along the Scioto river, in the heart of the city, until recent years unsightly and undesirable. The city council made $150,000 available with which land along the river between Broad and Town streets was purchased for park and boulevard purposes. In proximity to this land the Central High School, city hall, and city prison have been erected.

It is evident that the placing of an imposing and magnificent structure such as the proposed state office building in the center of the district purchased by the city would give an impetus to the civic center plan such as nothing the city itself could accomplish.

It is developed from the record that of the total area to be acquired by the state for the new building but 18 per cent. thereof will be covered by the office structure proper; the remaining portion of the site, including that to be acquired from the city, will be devoted to parking space. Thus will be brought about the specific purpose for which the land was purchased by the city, for which purpose it will

certainly be used until 1941, and in all probability so long as the state occupies it.

This consideration of great value is distinct and different from those which would move to the citizens of Columbus from the selection of any other site. Other considerations peculiar to this site are the diversion of traffic from the more congested portions of the city to the thoroughfares alongside of the new office building. It is testified by competent witnesses that when the plan in contemplation by the city and state is adopted, whereby Scioto street will be removed from its present location to a place along the east side of the river, this street, in conjunction with other thoroughfares, will materially assist in meeting the present and future menacing traffic situation. The transfer of some two thousand employees from other parts of the city to the new office building, with the incidental business which will be drawn thereto, not only from the city but throughout the state, will, in and of itself, materially reduce the extent of traffic, vehicular and pedestrian, in other parts of the city, and divert it to a section where traffic now is of minor consequence. Another consideration is the erection of two large comfort stations, which might not be feasible if another and smaller site were selected. Other advantages, valuable, but which would probably accrue to the city if another site were selected, are the provision for auditoriums for public use in the building and the housing of the state public library.

The court in *City of Cleveland* v. *Public Library Board, supra,* at page 323 of 94 Ohio State, 114 N. E., 247, 250, says:

"The erection of a substantial and handsome pub-

lic library building upon the residue of this property
\* \* \* brings within the very heart of the territory
comprised in the City of Cleveland in 1854 not only
a valuable public agency for the pleasure and educa-
tion of its people but also a magnificent public build-
ing that will tend to the enhancement of the value
of all property in that locality.''

All the advantages accruing to the city of Cleve-
land in the case just cited, and more, will likewise
pass to the city of Columbus by the erection of the
state office building according to the plans and speci-
fications adopted by the commission.

And that this transfer is in the interest of the pub-
lic welfare, and of unusual advantage to the city of
Columbus, is testified by an imposing array of wit-
nesses, who certainly are qualified to speak on the
subject, and whose interest in the advancement of
the city cannot be questioned:

Mayor James J. Thomas says:

''The location of the State Office Building there
would be of inestimable value to Columbus, fitting
in there with the City Hall, which is on the north
side, then the open air space and the park, making it
possible for the carrying out of the program for that
improvement of the Boulevard through, and an in-
centive to the further improvement of the river that
is so necessary.''

William H. Duffy, director of public service, says:

''The city gets the advantage of park spaces, in
my judgment worth at least $800,000.00; that is the
biggest item accruing to the City because of the loca-
tion of the State Office Building on this site, which
was originally intended to be a park, or made a park
if possible. The State is doing the thing that the

City had attempted to do, and had planned to do, and the citizens of Columbus have the same use of this park as they would have if the City had acquired it and parked it."

Prof. Frank H. Eno:

"It would cost the City thousands of dollars to buy this property and make a park out of it; if the State buys the buildings and then parks that, then the value has accrued to the citizens of Columbus without their having spent a cent, unless that small piece of property; and I believe that the value of the park is dollars and cents to the City, represented by hundreds of thousands of dollars the citizens would have to spend to get it."

There is no direct testimony to contradict the convincing force of the statements of these witnesses. The proof is clear and convincing that the consideration received from the state of Ohio by the city of Columbus for the transfer of the land is adequate.

We have examined the cases of *Wasson* v. *Commissioners*, 49 Ohio St., 622, 32 N. E., 472, 17 L. R. A., 795; *Hubbard, Treas.*, v. *Fitzsimmons*, 57 Ohio St., 436, 49 N. E., 477; *State, ex rel. Clemmer & Johnson Co.*, v. *Turner, Atty. Gen.*, 93 Ohio St., 379, 113 N. E., 327; and the other cases cited, and are of the opinion that in view of the pronouncement of the Supreme Court in *City of Cleveland* v. *Public Library Board, supra,* they are not in conflict with the action taken by the city in this case.

The acquisition of the river site for the state office building is of such manifest value to the citizens of Columbus, and the good faith of those in authority who have undertaken to bring about this transfer is so evident, that the court has no hesitancy in sup-

porting the action, if it can be legally done. We are convinced that the council of the city of Columbus has the authority to make this transfer, that it was properly exercised by the enactment of Ordinance No. 24-30, and no reason appears which would justify the granting of injunctive relief. The prayer of the petition will therefore be denied.

*Decree accordingly.*

KUNKLE, P. J., and ALLREAD, J., concur.