SIBEL et al. v. STATE BOARD OF PUBLIC AFFAIRS et al.

No. 34910.    May 6, 1952.

*244 P. 2d 307.*

Fletcher Riley, Oklahoma City, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., and Richard M. Huff, Asst. Atty. Gen., for defendants in error.

HALLEY, V. C. J.  On the 29th day of August, 1950, the State Board of Education entered into a contract with the State Board of Public Affairs for the purchase of machinery for the establishment and installation of a bookbinding plant at the penitentiary at McAlester, Oklahoma.  The State Board of Public Affairs thereafter entered into a contract with John R. Wald Company of Huntington, Pennsylvania, whereby the Board issued its purchase order and agreed to buy from said company, for a consideration of $44,830, the machinery necessary to install the plant.

On August 31, 1950, Ed Sibel, in behalf of himself and others named in the petition who are similarly situated, being engaged in the printing and bookbinding business in Oklahoma, brought an action in injunction for the purpose of enjoining defendants from carrying out the terms of the contract entered into between them, and to enjoin the State Board of Public Affairs from authorizing payment for the machinery purchased from John R. Wald Company out of the public funds of the state.

The above facts are all pleaded by plaintiff in his amended petition and are admitted by defendants in their answer.

The case was submitted to the court on motion for judgment on the pleadings.  Judgment was entered in favor of defendants and against plaintiff, denying his application for an injunction.

Plaintiff appeals and contends, among other things, that the contract entered into between defendants for the purpose of establishing the plant at the State Penitentiary, and for the use of convict labor in the installation and operation thereof, is void in that it violates the provisions of sec. 2, art. 23, of the Constitution of Oklahoma, which prohibits the contracting of convict labor.  This contention has been decided adversely to plaintiff in Rice v. State ex rel. Short, Atty. Gen., 108 Okla. 4, 232 P. 807, wherein it is held:

"The business of manufacturing shirts by the state, in its penitentiary, by the use of convict labor, is for a public purpose, and is authorized by sec. 31 of Art. II of the Constitution, providing that the right of the state to engage in any occupation or business for public purposes shall not be denied nor prohibited. * * *

"A contract between the state and a shirt manufacturer, by the terms of which the state agrees to install a shirt factory in its penitentiary, and to manufacture and sell to such manufacturer certain work shirts, manufactured by the state, from materials, and with machinery and equipment, furnished by it, does not amount to the contracting of convict labor, within the contemplation of section 2, art. 23, of the Constitution, prohibiting the contracting of convict labor."

Plaintiff, however, asserts that the above case is not applicable; that it is distinguishable from the present case on the facts, since in that case it is shown that the product manufactured was manufactured for the purpose of selling to various parties throughout the state, while in the present case convict labor is merely being contracted for the repair of an existing product; and that the State Board of Public Affairs was there authorized by statute to install and equip the State Penitentiary with a factory for the purpose of manufacturing said product with the use of convict labor, whereas in the present

case no statute exists authorizing the State Board of Education to enter into the contract with the State Board of Public Affairs for the establishment of the plant here involved. We do not agree.

The State Board of Education was authorized to enter into such contract with the State Board of Public Affairs under 74 O. S. 1951 §123, which provides:

"The State Board of Public Affairs is hereby authorized and empowered to establish and operate within the penal and eleemosynary institutions of this State under its jurisdiction such diversified industries, the products of which can be used by departments, institutions and agencies of the State and its political subdivisions."

Sec. 123(a), as well as §123(f) of said title, prohibits the state from using convict labor in the manufacture of any product for sale or distribution to others than the departments, institutions and agencies of the state and its political subdivisions where such product is generally manufactured by private industries in the state. Sec. 132, 57 O.S. 1951, provides:

"The State Board of Public Affairs shall have the management and control of the penal institutions of this State, located at McAlester and Granite, and may prescribe rules and regulations for the conduct and management thereof. Said board shall have the authority to install and equip such business enterprises, occupations, factories, manufactories, farming, and any other business not prohibited by the Constitution, as will employ the inmates of said institutions, and may employ such persons as are necessary for the construction and operation of any building, factory, shop, business or enterprise connected with said institutions.* * *"

See, also, §581, 74 O. S. 1951.

In the present case, under the pleadings and admitted facts, the bookbinding plant contracted to be installed at the penitentiary is to be installed and operated for the purpose of repairing and rebinding used and damaged textbooks, which, under the provisions of sec. 6, art. 13, of the Oklahoma Constitution, and §16-20, 70 O.S. 1951, belong to and constitute the property of the state. The State Board of Education had the authority under these sections to enter into the contract with the State Board of Public Affairs for the purpose of installing the bookbinding plant at the penitentiary. The enactment of these sections of the statute is authorized by sec. 31, art. 2, of the Oklahoma Constitution.

The contentions of plaintiff that there existed no statute authorizing the installation of the plant here involved, and that the contract entered into between the State Board of Education and the State Board of Public Affairs is void in that it violates the provisions of sec. 2, art 23, of the Oklahoma Constitution, cannot be sustained.

It further appears that in June, 1949 (S. L. 1949, p. 731), the Legislature passed the following appropriation bill which, as far as here material, provides:

"Section 1. There is hereby appropriated from any monies in the State Treasury, not otherwise appropriated, the sum of Two Million, Four Hundred and Twenty Thousand ($2,420,000.00) Dollars, to the State Board of Public Affairs to be contracted and expended by the State Board of Public Affairs for the construction of buildings and to repair, replace and modernize existing public buildings at the institutions named in this Act, and for the purchase of new equipment and the replacement of equipment, including the purchase of equipment for the industries at the State Penitentiary and the State Reformatory, and the replacement of fixed equipment necessary to place the heating, water and electrical systems in condition to supply the facilities at each of the institutions named in this Act. The appropriation herein made is hereby appropriated from the following funds: * * *

"Section 2. The State Board of Public Affairs is hereby authorized and directed to let contracts and to expend the funds appropriated herein for the

purposes set forth in Section One of this Act at the following institutions: Tuberculosis Sanatoriums, Mental Hospitals, State Penitentiary, State Reformatory, * * *.

"Section 3. The State Board of Public Affairs shall charge all contracts and expenditures for projects at the institutions named in this Act, against the consolidated lump sum appropriation made by Section One of this Act."

It is pleaded by plaintiff's petition and admitted by defendants in their answer that the State Board of Public Affairs now seeks to pay out of the lump-sum appropriation the above mentioned sum of $44,830.

It is contended by plaintiff that the appropriation there made is ineffective for any purpose, for the reason that it violates sec. 55, art. 5, of the Oklahoma Constitution, which provides that:

"No money shall ever be paid out of the treasury of this State, * * * except in pursuance of an appropriation by law, * * * and every such law * * * shall distinctly specify the sum appropriated and the object to which it is to be applied, * * *."

With this contention we do not agree. The appropriation expressly specified the sum appropriated and the object to which it is to be applied. True, the appropriation is made in a lump sum and may, at the discretion of the State Board of Public Affairs, be allocated to the various institutions mentioned in the bill as need may require, and the amount expended for each of several departments or institutions is to be charged against the lump sum appropriated, but this does not render the appropriation void. The appropriation made sufficiently complies with the provision of the above mentioned section of the Constitution.

In State ex rel. Murray v. Carter, State Auditor, 167 Okla. 473, 30 P. 2d 700, this court said:

"The amount of the appropriation made to the State Penitentiary by House Bill No. 240, for the fiscal year ending June 30, 1933, was distinctly specified, to wit, the sum of $782,730, and the object to which that sum was to be applied was distinctly stated, to wit: 'for the payment of salaries, maintenance and other expenditures.' The bill was a completed law when passed by the Legislature and signed by the Governor. The Constitution of this State does not require the Legislature to itemize the amount appropriated for an institution in an appropriation bill, and the appropriation is distinctly specified, as provided by section 55 of article 5 of the Constitution, when the appropriation is made in a lump sum 'for the payment of salaries, maintenance, and other expenditures' of the institution named. * * *"

In Meyer, State Auditor, v. Clift, 31 Okla. 793, 123 P. 1042, this court, referring to sec. 55, art. 5, of the Oklahoma Constitution, said:

" * * * The foregoing constitutional provision requires that every appropriation act shall, first, distinctly specify the sum appropriated; secondly, the object to which it is to be applied; and, thirdly, prohibits the fixing of the sum appropriated by reference to any other law. By reason of these requirements, we must be able to ascertain from any act by which an appropriation is attempted to be made the amount it authorizes to be paid out of the treasury for the purposes designated in the act. * * *"

In this case we think it may be readily ascertained from the appropriation made the amount which it authorizes to be paid out of the treasury for the purposes designated in the Act.

In Wells v. Childers, State Auditor, 196 Okla. 339, 165 P. 2d 358, it appears that the Legislature, in 1945, passed an appropriation bill known as House Bill 518, which created a cash fund to be known as the Governor's Contingency Fund. The State Tax Commission was directed to transfer to that fund $200,000 from the sales tax funds of said commission and an appropriation was made out of the General Revenue Fund in the sum of $200,000, to be used and expended by the Governor and to be

allotted at his discretion for the various purposes and to the various institutions therein mentioned, as follows:

"* * * (1) necessary repair or replacement of public buildings destroyed or damaged by fire, hail, tornado, explosion, or other hazard; (2) emergencies resulting from increase in the cost of food, clothing and maintenance necessary for the operation of any State penal, charitable, or eleemosynary institution; (3) for supplemental allocation to the Oklahoma State Regents for Higher Education for emergency needs of the institutions comprising the Oklahoma State System of Higher Education; (4) necessary maintenance of the National Guard when released from federal service; (5) necessary augmentation of any appropriation for any State function which may be reduced by reason of a failure in the revenue provided to finance such appropriation; (6) for the purchase of food and clothing, maintenance costs, and payment of salaries at penal and eleemosynary institutions of the State; (7) for the repair and replacement of highways and bridges destroyed or damaged by floods; and (8) any circumstances, condition or situation which, in the judgment of the Governor, requires the expenditure of money for the extraordinary protections of the State and for which expenditures specific appropriation has not been made; but not excluding any other contingencies or emergencies not specifically enumerated."

The appropriation was there attacked upon the ground, among others, that it violated the provisions of sec. 55, art. 5, of the State Constitution, which provides that every law making or reviving an appropriation shall distinctly specify the sum appropriated and the object to which it is to be appropriated. The court denied this contention and sustained the appropriation. What is said there applies here.

Judgment affirmed.

WELCH, CORN, GIBSON, DAVISON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.