THE STATE, EX REL. THE FULTON FOUNDRY & MACHINE CO., INC.,
ET AL., *v.* MORSE ET AL., INDUSTRIAL COMMISSION OF OHIO.

(No. 5408—Decided May 7, 1956.)

*Mr. Louis R. Cousineau* and *Mr. Paul L. Birt,* for relators.
*Mr. C. William O'Neill,* attorney general, *Mr. Paul Tague, Jr.,* and *Mr. James L. Young,* for respondents.

FESS, J.  This is an action in mandamus originating in this court brought by three employers as relators on their own behalf and also on behalf of all employers of labor amenable to the Workmen's Compensation Act, public as well as private. The action can not be brought as a class action. *Davies* v. *Columbia Gas & Electric Corp.,* 151 Ohio St., 417, 86 N. E. (2d), 603; *State, ex rel. Gerspacher,* v. *Coffinberry,* 157 Ohio St., 32, 104 N. E. (2d), 1; *Colbert* v. *Coney Island, Inc.,* 97 Ohio App., 311, 121 N. E. (2d), 911; *State, ex rel. Stevens,* v. *Industrial Commission,* 73 Ohio Law Abs., 217. However, no objection is raised by respondents with regard to misjoinder.

In the main, relators attack the constitutionality of Sections 4123.341 and 4123.342, Revised Code, enacted October 21, 1953,

pursuant to which additional contributions have been exacted from public and private employers for defraying administrative costs of the commission.

In their petition, relators allege in part:

"Plaintiffs further say that in addition to said rates of premium, the Industrial Commission has caused an illegal increase in said premiums or collections and collected as such increased premiums or collections since October 21, 1953, certain monies; that the exact amount of said collections are unknown to these plaintiffs; that such collections are not based upon a percentage of premium; that such collections are not uniform to all employers; that such additional premiums or collections are not based or collected upon hazard alone; that such collections were not for the purpose of providing and paying compensation to workmen or their dependents for injuries, death, or occupational disease, occasioned in the course of employment; that such collections were not for the purpose of distribution of the fund by the board; that such collections were not for the purpose of paying compensation after determination of the rights of the claimants to said fund; that such collections were not for the purpose of payment of the 1% limitation into the special fund for administrative costs of the safety and hygiene; that such collections were not an increase in the premium to pay an additional award; that such collections were not for the purpose of recouping the State Fund for the payment of an additional award; that such collections were not made to equalize premium with compensation provided by law; nor were such collections made for the purpose provided by the Constitution for compulsory contributions; nor were such collections within the limits provided by said Constitution; nor for any purpose provided by the Constitution, but were made against the express statement of said Constitution that an increase in employer's premium except as provided is contrary to any and all other provisions of said Constitution.

"Plaintiffs further say that the Industrial Commission of Ohio has never performed the duty imposed by their office and the law of applying said illegal collections to the legal rates of premium; that they have never credited or applied such collections to the individual risks upon the legal rates they fixed and

determined within their jurisdiction; that the said board is without authority and jurisdiction to apply said collections for any purposes except those stated in the Constitution; and that said Industrial Commission has not performed their legal duty of considering and applying said monies upon the five years' experience of said employers; that upon the rate revision date of July 1, 1953, they did not consider said monies in fixing said legal rates or billing said employers or collecting from said employers; that they have failed to perform their duty of crediting all monies received to the risks for the purpose of paying compensation or the purpose stated in said Constitution; and that said monies and interest thereon is held illegally and without legal purpose.

"Plaintiffs further say that such collections were not made or held within the jurisdiction or discretion of said commission; that such collections are an excess of earned premium over all losses and the subscribers are entitled to cash refunds or reduction of premium; that such collections were in excess over the lowest possible rates; that in making said collections the commission did not maintain the lowest rates; that said collections have not been credited to individual rates for compensation purposes; and that credit to the amount of such collections is due every employer.

"Plaintiffs further say that they are without an adequate remedy at law; that no action is provided by statute for the recovery of monies paid the Industrial Commission or for the reduction of rates; that they will suffer penalties if they do not pay the illegal rates; that all these many plaintiffs will suffer harm; and that Ohio principle of workmen's compensation will be destroyed unless relief is granted by this court.

"Wherefore, plaintiffs pray for themselves and all those similarly situated that a writ of mandamus issue ordering the Industrial Commission of Ohio to apply, consider, and credit all monies collected of every nature whatsoever to fixing rates of premium for payment of claims for injury, death or occupational disease, or for payment of a violation of a specific requirement, or for payment of the administrative costs for safety and hygiene providing such do not exceed 1% of premium per year, all as provided in the Constitution and for no other pur-

pose whatsoever; that the commission be ordered to credit to each individual risk of each employer all monies of every description received from said employers to and for the purposes stated above and for no other purpose whatsoever; that the commission be ordered to refund all monies collected in excess of the legal rates of premium it has determined for the purposes stated above and such refund be made to said employers, or that such excess be used to reduce the rates of premium in such amounts so as to credit such employers with such excess amounts collected, and for an award of costs that is equitable, reasonable and just, and for such other relief to which all these plaintiffs may be entitled in law or equity.''

Since the relief sought is essentially injunctive in character, there is serious doubt as to the jurisdiction of this court to entertain the action. *State, ex rel. Smith,* v. *Industrial Commission,* 139 Ohio St., 303, 39 N. E. (2d), 838.

Upon the allegations of the petition and the prayer, we could also well hold that there is an adequate remedy by way of injunctive relief in equity. *State, ex rel. Van Harlingen,* v. *Board of Education,* 104 Ohio St., 360, 136 N. E., 196; *State, ex rel. Juhlman,* v. *Conners,* 122 Ohio St., 355, 171 N. E., 589; *State, ex rel. Smith,* v. *Industrial Commission, supra*; *State, ex rel. Stanley,* v. *Cook, Supt.,* 146 Ohio St., 348, 66 N. E. (2d), 207. We doubt whether the record discloses affirmatively that there is no plain and adequate remedy in the ordinary course of law. *State, ex rel. Stanley,* v. *Cook, supra.* However, the prayer seeks to command the performance of certain acts and does not in specific terms seek to restrain respondents from collecting additional premiums or from performing other allegedly unconstitutional acts in the future, except in the general prayer for other and further relief in law or equity. If the allegations of the petition are construed liberally in favor of the pleader, the petition may state a cause of action in mandamus within the jurisdiction of this court. Section 2309.40, Revised Code.

Upon the somewhat dubious assumption that this court has jurisdiction and that relators have no adequate remedy at law, we proceed to consider whether Sections 4123.341 and 4123.342, Revised Code, are valid constitutional enactments. In the main, Section 35, Article II of the Constitution, empowers the General

Assembly to enact laws establishing a state fund to be created by compulsory contribution thereto by employers, administered by the state, determining the terms and conditions upon which payment shall be made therefrom; and to establish a board empowered to classify occupations according to their degree of hazard, to fix rates of contribution to such fund according to such classification, to collect, administer and distribute such fund, and to determine all right of claimants thereto.

It is a fundamental axiom of constitutional law that an express grant of power impliedly includes incidental powers necessary and proper for carrying into execution the expressed power. Long ago, James Madison presaged John Marshall's celebrated expression in *McCulloch* v. *Maryland*, 17 U. S. (4 Wheat.), 316, 4 L. Ed., 579, when he wrote in *The Federalist*:

"No axiom is more clearly established in law, or in reason, than that wherever the end is required, the means are authorized; whenever a general power for doing it is included * * *."

Furthermore, the police power was not exhausted by the adoption of Section 35, Article II. *Fassig* v. *State, ex rel. Turner, Atty. General*, 95 Ohio St., 232, 116 N. E., 104; *State, ex rel. DeTorio*, v. *Industrial Commission*, 135 Ohio St., 214, 20 N. E. (2d), 248. Section 35 constitutes a broad grant of power to establish and administer the fund without limitation. *State, ex rel. Michaels*, v. *Morse*, No. 5372, February 7, 1956, Franklin County Court of Appeals, unreported. Cf. *State, ex rel. English*, v. *Industrial Commission*, 160 Ohio St., 443, 117 N. E. (2d), 22.

With the exception of powers not delegated, reserved in Section 20, Article I of the Constitution, and the initiative and referendum powers reserved in Section 1, Article II, the people, as the source of legislative powers, have vested such powers in the General Assembly. Section 1, Article II.[1]

Those legislative powers extend to every legitimate pur-

---

[1] "It will be observed, that the provision is not, that the legislative power, *as conferred in the Constitution*, shall be vested in the General Assembly, but that the LEGISLATIVE POWER OF THIS STATE shall be vested. That includes all legislative power which the object and purposes of the state government may require, and we must look to other provisions of the Constitution to see how far, and to what extent, legislative discretion is qualified or restricted. Hence, the difference between the Constitution of the United States and a state Con-

pose of legislation pertaining to civil government. To determine to what extent legislative discretion is qualified, restricted or prohibited, resort must be had to other provisions of the Constitution. 10 Ohio Jurisprudence (2d), 318, Section 242. Thus, the legislative power is generally deemed ample to authorize the enactment of a law, unless the legislative discretion has been qualified or restricted by the Constitution in reference to the subject matter in question, *State, ex rel., v. Jones, Aud.*, 51 Ohio St., 492, 37 N. E., 945; *Ostrander, Admr., v. Preece, Admr.*, 129 Ohio St., 625, 196 N. E., 670, and if a legislative power is not limited or denied, it may be said to exist. *Green v. Thomas, Mayor*, 37 Ohio App., 489, 175 N. E., 226; *Baker v. City of Cincinnati*, 11 Ohio St., 534. It is for the Legislature alone to judge what means are necessary and appropriate to accomplish an end which the Constitution makes legitimate. *Priest v. City of Wapakoneta*, 24 Ohio Law Abs., 214, 32 N. E. (2d), 869, citing *McCulloch v. Maryland.* If the means adopted are not prohibited by the Constitution, the judgment of the legislative body is final and conclusive. *Cincinnati, Wilmington & Zanesville Rd. Co. v. Commrs. of Clinton County*, 1 Ohio St., 77.

It is readily observed that there is no restriction or limitation in the Constitution upon the General Assembly to provide for the payment of administrative expenses, the source from which they are to be paid, or with respect to the manner of payment. It is hardly necessary to say that to provide for the cost of administration is not only proper but is an absolutely necessary incident to the exercise of the power conferred upon the General Assembly to establish and administer the fund. Otherwise, the General Assembly could not even appropriate money from the General Fund to defray the cost of administration. In the absence of constitutional limitations, it therefore lies within the discretion of the Legislature to provide for administration from taxes imposed upon the public at large, or to levy such tax, assessment or contribution upon employers required to contribute to the fund.'

stitution such as ours. In the former, we look to see if a power is expressly given; in the latter to see if it is denied or limited." *Baker v. City of Cincinnati*, 11 Ohio St., 534, 542.

'It is not uncommon for a licensing act to exact a license fee commensurate with the cost of administration.

The failure of the General Assembly to make provision for the payment of the cost of administration by exacting contributions therefor from employes prior to 1953 could be regarded as a recognition by the Legislature that the obligation to care for administrative expenses should be imposed upon the state at large.[3]

It is to be observed that the provision for the creation of a surplus in the fund is likewise without express constitutional authority.

But, after all, this is a matter of legislative policy to be determined within the discretion of the General Assembly. The contention of the relators that the enactment of the section in question was influenced by the traditional enemies of workmen's compensation and constitutes a raid upon the fund is absurd.

It is possible that the fund, having been created pursuant to the former law for the purpose of paying claims without exacting a premium charge for administrative expenses, should not have been used in 1953 for administrative expenses. But we are advised that the initial amount withdrawn for administrative purposes has been restored from subsequent collections from employers. Therefore, any claim for initial conversion of the fund has become moot. *Miner* v. *Witt, Clerk*, 82 Ohio St., 237, 92 N. E., 21. The General Assembly, in its discretion, might have provided three funds: 1, administrative; 2, public; and 3, private fund. But certainly there is no constitutional objection to having all premiums or contributions, including that portion for administration, deposited in the State Insurance Fund, so long as proper bookkeeping allocation is made. The Legislature might also have provided that the portion of the

---

[3] Prior to the enactment of Sections 4123.341 and 4123.342, the following administrative payments had been made.

1. Common Pleas Court costs, including a fee to a successful claimant's attorney;

2. Appellate costs in courts of review;

3. Cost of independent auditors of the state fund;

4. Charges of the rehabilitation center for services and facilities afforded to any employee who is disabled because of injury or disease suffered in the course of his employment.

premium charged for administration should be paid into the General Fund. But expenses of the commission are paid from the General Fund of the state, and from a bookkeeping standpoint it apparently is more feasible to deposit and allocate the collections as provided in Sections 4123.341 and 4123.342, Revised Code. Again, this is a matter of legislative policy.

Relators also contend that the 1924 amendment to Section 35, Article II, providing for setting aside as a separate fund one per cent of the contributions for investigation and prevention of industrial accidents and diseases, is a recognition by the people that the contributions must be devoted solely to the payment of claims  It is apparent that investigation and prevention of industrial accidents and diseases was beyond the scope of the power conferred in the original amendment, similar to the provision for an additional award for violation of a specific requirement.  The adoption of the 1924 amendment, therefore, has no bearing upon whether employers may now be asseessed for administration expenses.

Relators' contentions that the administrative assessment is based solely upon payroll and not experience or hazard, thus denying equal protection, is difficult to comprehend.  Section 4123.342, Revised Code, provides that the commission shall collect the amount allocated to each class by assessing the employers in the same manner as employers are assessed under Section 4123.34 for maintenance or solvency of the State Insurance Fund.  Subsection (B) of Section 4123.34 provides that ten per cent of the money paid into the fund shall be set aside for creation of a surplus; and it also provides for annual revision of rates, but the monies referred to are collected pursuant to Section 4123.29, upon the basis of payroll and hazard.

Under Section 4123.29, the commission is required to classify occupations and industries with respect to their degree of hazard, and determine the risks of the different classes and fix the rates of premium of the risks of same, based upon the total payroll in each class.  Where the payroll is not an adequate measure for determining the premiums to be paid for the degree of hazard, the commission may determine the rate upon such other basis, consistent with insurance principles, as may be equitable in view of the degree of hazard.  Thus, the degree

of hazard may become an important factor in determining the premium because of the greater number of potential claims to be paid. But the costs of administration are not so materially affected by the degree of hazard of employers, and it cannot be said that the levying of an additional assessment for administrative expenses based upon payroll alone is arbitrary and denies those employers maintaining adequate safety standards the equal protection of the law.

The administrative costs referred to in Section 4123.341 are those incident to the duties and performance of the activities of the commission under the provisions of Chapters 4121 and 4123 of the Code, including the added administrative costs of the state rehabilitation center. Other duties—in addition to those relating to the collection and administration of the state fund—relate to safety and hygiene, arbitration of labor disputes and boiler inspection.[4]

Provision for the performance of those other duties is a proper exercise of the legislative (police) power vested in the General Assembly. Likewise, provision made by law for the payment by employers of the administrative costs entailed thereby, commensurate with the expense thereof, does not contravene any provision of the Constitution.

In conclusion, relators have failed to show such a clear incompatibility between Sections 4123.341 and 4123.342 and the Constitution as to justify this court in holding such sections unconstitutional. Relators have an adequate remedy at law by way of injunction and have failed to show a clear right to relief.

*Writ denied.*

MILLER, P. J., and HORNBECK, J., concur.

FESS, J., of the Sixth Appellate District, sitting by designation in the Second Appellate District.

---

[4]Presumably the costs of boiler inspection are defrayed by license fees imposed under Section 4103.14, Revised Code.