C. D. MITCHELL, Administrator with Will Annexed of the Estate of W. A. Graham, Plaintiff in Error,

v.

Mac Q. WILLIAMSON, John O. Baker, and Earl Ward, Trustees of the W. A. Graham Public Improvements Trust Estate, Defendants in Error.

No. 36968.

Supreme Court of Oklahoma.

Nov. 20, 1956.

Creekmore Wallace, Pryor, and Thomas A. Wallace, Tulsa, for plaintiff in error.

A. C. Wallace, John R. Wallace and Ben T. Owens, Miami Okl., for defendants in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., Charles E. Dierker, and Curtis P. Harris, Special Counsel, Oklahoma City, for Governor of State of Oklahoma, and on behalf of the State of Oklahoma, amici curiæ.

Jack L. Freeman, Pryor, on behalf of City of Pryor and Mayes County.

WILLIAMS, Vice Chief Justice.

This action was brought by Mac Q. Williamson, Earl Ward and John O. Baker, Trustees of the W. A. Graham Public Improvements Trust Estate, hereinafter referred to as plaintiffs, against C. D. Mitchell, administrator of the W. A. Graham Estate, and others, hereinafter referred to as defendants, to recover that portion of the W. A. Graham Estate ordered distributed to them by the Final Order and Decree of Distribution entered by the County Court of Mayes County in said estate on April 7, 1954, more than a year prior to the bringing of this action.

Defendant Mitchell demurred to plaintiff's petition and upon the demurrer being overruled, elected to stand upon his demurrer and refused to plead further. The court thereupon entered judgment for plaintiffs and against said defendant, from which said defendant has perfected this appeal.

As his first proposition of error, defendant Mitchell contends that the District Court of Mayes County is without jurisdiction over the subject matter of this action because probate proceedings are pending in the County Court of Mayes County on the estate involved in this action. We find no merit in such contention.

Plaintiffs' petition alleges, insofar as is material to this appeal, that W. A. Graham, a resident of Pryor, Mayes County, Oklahoma, died testate on March 28, 1952; that the last will and testament of W. A. Graham, deceased, was duly admitted to probate in the County Court of Mayes County on April 16, 1952; that on March 2, 1954, the estate being fully administered upon and being ready to be distributed, the administrators, one of whom was defendant Mitchell, filed their final account and petition for distribution; that proper statutory notice was given that such final account and petition for distribution would be heard by the court on April 7, 1954; that on April 7, 1954, defendant Mitchell was present in person and by counsel and at that time the county court entered a final order and decree of distribution approving the final account of the administrators and ordering the estate of W. A. Graham, deceased, distributed as requested by the administrators; that said final order and decree of distribution, after providing for the distribution of various specific bequests and payment of fees, provided for the distribution of the residuary estate of W. A. Graham, deceased, to the plaintiffs, as Trustees of the W. A. Graham Public Improvements Trust Estate, under authority of 60 O.S.Supp.1953 § 381 et seq.; that no appeal was perfected by anyone from said final order and decree of distribution and the same has become final and is binding upon all the parties thereto; that defendant Mitchell has failed and refused to deliver the residuary estate so distributed to plaintiffs. Such allegations are admitted by defendant's demurrer and for the purpose of this appeal must be taken as true. Such an action is specifically authorized by 58 O.S.1951 § 632, which provides:

> "In the order or decree, the court must name the persons and the proportions or parts to which each shall be entitled, and *such persons may demand, sue for and recover their respective shares from the executor or administrator*, or any person having the same in possession. Such order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal." (Emphasis added.)

While this court has apparently never had occasion to construe the emphasized portion of the above quoted statute, it does not appear to be ambiguous and there could be no doubt as to its meaning. The Supreme Court of California has construed an almost identical statute to authorize a distributee under a final order of distribution to sue the executor or administrator for the property ordered distributed thereby. St. Mary's Hospital v. Perry, 152 Cal. 338, 92 P. 864; Le Mesnager v. Variel, 144 Cal. 463, 77 P. 988; Melone v. Davis, 67 Cal. 279, 7 P. 703.

We therefore conclude that the district court had jurisdiction of the instant action by virtue of the provisions of 58 O.S.1951 § 632, supra.

As his second proposition defendant contends that an act of the legislature which attempts to take away property rights retrospectively which have vested under the will of testator is unconstitutional because it violates the due process clause of the Federal Constitution, U.S.Const. Amend. 14, and the Constitution of the State of Oklahoma. Such contention is, as an abstract proposition of law, a generally correct statement, but as applied to the case at bar it is wholly without merit. The Act to which defendant refers is House Bill No. 883 of the Twenty-Fourth (1953) Oklahoma Legislature, now found at 60 O.S.Supp.1953 § 381 et seq. Such Act relates to gifts, testamentary and otherwise, to the State of Oklahoma, counties, cities, towns and school districts therein; provides for the construction of instruments by which such gifts are made, for the acceptance of such gifts, and for the use, management, control and disposition of the property involved in such gifts. It was by virtue of the provisions of such Act that the residuary estate of W. A. Graham, deceased, was ordered distributed to plaintiffs as trustees. Such Act

became effective April 1, 1953, approximately one year after the death of W. A. Graham and approximately one year before the entry of the final order and decree of distribution in the estate of W. A. Graham, deceased. By specific provisions therein such Act was made applicable to all gifts, whether made before or after the effective date of the Act except those which had already been delivered to the beneficiary thereof or testamentary gifts as to which a final judgment construing the will or a decree of distribution under the will involved had been entered prior to the effective date of the Act. Defendant's contention is, in brief, that the residuary estate of W. A. Graham, deceased, vested in the State of Oklahoma, the County of Mayes, and the City of Pryor, upon the death of W. A. Graham, and that the effect of the Act of 1953 above cited was to deprive such governmental entities of their property without due process of law in so far as the residuary estate of W. A. Graham, deceased, was concerned, and to that extent such Act is therefore unconstitutional.

■ The fallacy in such argument is, of course, that the County of Mayes, and the City of Pryor, are political subdivisions of the State and the constitutional provisions against laws which impair vested rights do not apply to such political subdivisions as against the State. City of Trenton v. State of New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937, 29 A.L.R. 1471; City of Pawhuska v. Pawhuska Oil & Gas Co., 250 U.S. 394, 39 S.Ct. 526, 63 L.Ed. 1054; City of Newark v. State of New Jersey, 262 U.S. 192, 43 S.Ct. 539, 67 L.Ed. 943; Williams v. Mayor and City Council of Baltimore, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015; City of Tulsa v. Oklahoma Natural Gas Co., D.C., 4 F.2d 399.

■ Furthermore, defendant Mitchell is in no position to raise such question. He does not contend that the Act in question deprives him of anything. It is well settled that this court will not pass upon the constitutionality of an Act of the Legislature or any of its provisions until there is presented a proper case in which it is made to appear that *the person complaining* has been or is about to be denied some right or privilege to which he was lawfully entitled, or is about to be subjected to some of its burdens or penalties. City of Shawnee v. Taylor, 191 Okl. 687, 132 P.2d 950; Shinn v. Oklahoma City, 184 Okl. 236, 87 P.2d 136, and cases therein cited; 16 C.J.S., Constitutional Law, § 76.

■■ As his third proposition, defendant contends that that portion of the final order and decree of distribution which distributes the residuary estate of W. A. Graham, deceased, to plaintiffs is void on its face. This proposition apparently presumes the correctness of defendant's second proposition, hereinabove discussed, and is based thereon. Since the second proposition is without merit, it logically follows that the third proposition is likewise without merit. The portion of the decree of distribution complained of is authorized by the provisions of the Act of 1953, 60 O.S.Supp.1953 § 381 et seq., above mentioned. The decree is therefore not void on its face, even though such statute be, as contended by defendant, unconstitutional for any of the reasons asserted in his fourth and fifth propositions, but is at most voidable only, and therefore not subject to collateral attack. Fitzsimmons v. City of Oklahoma City, 192 Okl. 248, 135 P.2d 340; Casner v. Meriwether, 152 Okl. 246, 4 P.2d 19; Jones v. McGrath, 160 Okl. 211, 16 P.2d 853; Walker v. Stubblefield, 167 Okl. 50, 27 P.2d 1043. The cases cited by defendant apply the well settled rule that where a court is acting pursuant to authority given by or in a particular statute and enters a judgment that is clearly contrary to such statute, and where the court is without statutory right to enter the judgment, such judgment is void on its face and subject to collateral attack. They are not applicable here, however, because the decree in question is in strict compliance with the statute in question and not contrary thereto. Fitzsimmons v. City of Oklahoma City, supra.

Furthermore, defendant Mitchell is, in our opinion, precluded from asserting in this action the invalidity of either the decree of distribution here involved or the statutory enactment upon which it is based. Such defendant, in conjunction with his co-administrators, filed in the County Court of Mayes County, the court having jurisdiction thereof, his final account and petition for distribution. Such court, at a hearing at which defendant was present in person and by counsel, approved such final account and entered its final order and decree of distribution in accordance with defendant's petition. No objection was made to such decree of distribution and no appeal was taken therefrom. Not only did defendant Mitchell concur in the entry of such decree, but some four months thereafter he joined with plaintiffs here in filing an original action in this court against the successor County Judge of Mayes County, Oklahoma, who was allegedly threatening to vacate such decree of distribution on his own motion, for the purpose of prohibiting such county judge from vacating such decree of distribution. In that action, State ex rel. Williamson v. Longmire, Okla., 281 P.2d 949, defendant Mitchell and his co-petitioners represented and contended to this court that such decree of distribution was valid, final and unappealed from, and that the Act of 1953 upon which it was based was also valid and constitutional. While this court did not find it necessary to pass on the constitutionality of the Act of 1953, it issued the writ prohibiting the county judge from vacating such decree on his own motion.

It is the rule in Oklahoma that where a judgment is rendered under an unconstitutional statute, by a court having jurisdiction to determine the validity or invalidity thereof, and the question is not raised, or the invalidity of the law asserted, a party to the action is precluded, under the rule of res judicata, from thereafter asserting the invalidity of the law to avoid such judgment, even though it has been subsequently declared unconstitutional. In such a case the rights are acquired under a valid judgment, not under the unconstitutional statute. National Life and Acc. Ins. Co. v. Parkinson, 10 Cir., 136 F.2d 506; State ex rel. Tharel v. Board of County Commissioners of Creek County, 188 Okl. 184, 107 P.2d 542; Walker v. Stubblefield, supra; Jones v. McGrath, supra; Casner v. Meriwether, supra.

As his fourth contention, defendant contends that the Act of 1953 is invalid because it violates Article 5, § 55, of the constitution of the State of Oklahoma. The only authority cited in support of such contention is Ex parte Pope, 33 Okl.Cr. 5, 242 P. 290, a 1925 opinion of the Criminal Court of Appeals. In that case that court held that The Real Estate Commission Act, chapter 129, session laws of Oklahoma 1925, created no special fund subject to public supervision or otherwise and that the legislative authority, thereby given to the real estate commission to collect and assemble funds in unknown amounts and to pay out and distribute the same to themselves and their employees, and for sundry other indefinite expenses without supervision, was not an appropriation within the meaning of section 55, article 5, of the Constitution of Oklahoma, and that the act was void.

Such case is, of course, not controlling upon this court and in view of the Criminal Court of Appeals' own refusal to follow such case in Reeves v. State, 36 Okl.Cr. 186, 253 P. 510, and Peters v. State, 56 Okl.Cr. 95, 34 P.2d 286, is not even particularly persuasive. The Reeves case involved The Medical Practice Act, Chapter 59, session laws 1923. About the only difference in the Medical Practice Act and the Real Estate Commission Act involved in the Pope case, supra, so far as the constitutional provision here involved is concerned, was that the State Treasurer was designated as the depository for the funds collected by and accruing to the Board of Medical Examiners under the Medical Practices Act, where as no depository was designated for the funds collected by and accruing to the Real Estate Commission under the Real Estate Commission Act. If

the designation of the State Treasurer as the depository of the funds involved is the criterion by which the constitutionality of an act creating or setting aside a special fund is determined, then the Act of 1953 here under consideration must be valid because it designates the State Treasury as the depository for the trust fund thereby created. Actually, of course, such is not the criterion, and neither the Pope case, supra, nor the Reeves case, supra, is particularly helpful here.

In the Peters case, supra, the Criminal Court of Appeals had under consideration the Barber Act, article 3, chapter 24, O.S. 1931, as amended by chapter 60, Session Laws 1933. In holding that such act did not violate article 5, section 55, of the Constitution, that court said in its opinion [56 Okl.Cr. 95, 34 P.2d 288]:

"Defendant relies upon Ex parte Pope, 33 Okl.Cr. 5, 242 P. 290, where this court held the act creating the State Real Estate Board unconstitutional and void. Drastic distinctions, however, may be noted between the act of the Legislature of 1925 (Laws 1925, c. 129) and the act here under consideration. The Real Estate Commission Act did not fix the maximum limit of the salaries of the members of the commission, but left them wholly to the discretion of the commission. In this act the maximum salary of each member of the Board of Barber Examiners is fixed at a definite amount. The Real Estate Act provided for no treasurer and created no special and distinct fund; whereas the act in the case at bar creates the office of treasurer, requires a bond, prohibits the expenditure of the funds except upon properly drawn orders or warrants on this treasurer. The Real Estate Act made no provision for reports to the Governor or an accounting to any department other than themselves, and made no requirement that any part of the funds collected should be paid into the state treasury, whereas the Barber

Act requires full, itemized reports to be filed annually with the Governor and Secretary of State, requires an accounting of all funds received and a showing of what the expenditures were and to whom they were made, and the payment of 10 per cent. of all funds collected into the general fund of the state treasury.

"Ex parte Pope, supra, is not in point in this controversy because none of the grounds upon which the Real Estate Act was declared unconstitutional exist in this act."

More pertinent are our own opinions in Edwards v. Childers, 102 Okl. 158, 228 P. 472; Wells v. Childers, 196 Okl. 339, 165 P.2d 358; Sibel v. State Board of Public Affairs, 206 Okl. 433, 244 P.2d 307, and Application of Oklahoma Turnpike Authority, 203 Okl. 335, 221 P.2d 795. Edwards v. Childers, supra, involved an Act of the legislature creating the State Highway Construction and Maintenance Fund and providing that a certain percentage of the revenue from gasoline taxes should be deposited in such fund, to be thereafter expended by the Highway Commission in the construction, maintenance and repair of highways. We held that such Act did not violate article 5, section 55, of the Constitution, and the opinion therein contains an exhaustive review of the pertinent authorities on the subject.

In Wells v. Childers, supra, the validity of the Act creating the Governor's Contingency Fund was in question. We held that it was valid and did not violate article 5, section 55, of the Constitution. In Sibel v. State Board of Public Affairs, supra, the validity of an Act appropriating certain funds to the State Board of Affairs was attacked. In the opinion therein we cited Wells v. Childers, supra, and then said [206 Okl. 433, 244 P.2d 311]:

"The appropriation was there attacked upon the ground, among others, that it violated the provisions of Sec. 55, Art. V of the State Constitution, which provides that every law making

or reviving an appropriation shall-distinctly specify the sum appropriated and the object to which it is to be appropriated. The court denied this contention and sustained the appropriation. What is said there applies here."

In Application of Oklahoma Turnpike Authority, supra, it was contended that certain provisions of the Oklahoma Turnpike Act violated Article 5, Section 55, of the Constitution, but we held that such was not the case.

The basic principles upon which all of the foregoing cases are based are set out in paragraphs 3 and 4 of the syllabus in Edwards v. Childers, supra, as follows:

"3. A legislative act creating a special fund, all of which is, by the terms of the act, appropriated and directed to be expended for a special purpose and in an express manner amounts to an appropriation of the entire fund so created, and where the amount accruing to and paid into said fund is capable of being definitely ascertained, it is sufficiently definite and certain to comply with the provisions of article 5, § 55, of the Constitution.

"4. Where a special fund is created from sources not coming from, or out of, the general revenue fund of the state, the authority to the official board or commission to spend said fund may be granted where the authority to disburse said fund or obligate the state is limited to the amount of money that may go into said fund, and such officer is not permitted to incur an indebtedness against the state which may be payable out of, or charged against, the general revenue funds of the state."

The act in question here meets all of the tests laid down in the above cited cases. It created a special fund from sources not coming from, nor out of, the general revenue fund of the state, directed its expenditure for a special purpose, the amount is capable of being ascertained, and the trustees are only authorized to spend money from this special fund. We therefore conclude that it is not unconstitutional as contended.

Furthermore, the subject matter of the Act in question is gifts to the state, counties and cities. There is no provision of the constitution which either authorizes or prohibits the making of such gifts. Nor is there any constitutional provision authorizing, requiring or prohibiting the acceptance of such gifts if made. The matter is one upon which the constitution is completely silent. In the absence of constitutional limitation thereof, the power of the legislature to legislate with regards to gifts to the state, counties and cities, can hardy be doubted. In this connection see In re Moore's Estate, 190 Or. 63, 223 P.2d 393; Green on behalf of City of Columbus v. Thomas, 37 Ohio App. 489, 175 N.E. 226; Irving Trust Co. v. Day, 314 U.S. 556, 62 S.Ct. 398, 86 L.Ed. 452, 137 A.L.R. 1093; In re Burnison's Estate, Cal. App., 196 P.2d 822, affirmed sub nom. United States v. Burnison, 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675; Phillips v. Chambers, 174 Okl. 407, 51 P.2d 303; In re Edge's Estate, 339 Pa. 67, 14 A.2d 293. We are of the opinion that the act in question is one authorizing the acceptance of gifts to the state, counties and cities, but limiting or regulating the acceptance or manner of acceptance of such gifts and the subsequent use thereof, and as such constitutes a perfectly valid exercise of legislative authority.

It is interesting to note the similarity of the factual situation in the case of In re Edge's Estate, supra, to the case at bar. In that case, testatrix died in 1932 leaving a will which gave her residuary estate to the commonwealth of Pennsylvania. At the time of her death there was no state constitutional provision or statute either authorizing or prohibiting such gift. In 1933 the legislature passed an act providing for the receipt of personal property *theretofore* or thereafter bequeathed to the commonwealth and the disposition to be made thereof; providing for the

vesting of title in the commonwealth of real property *theretofore* or thereafter devised to the commonwealth and for the custody, repair, leasing and sale thereof by the Department of Property and Supplies; and providing for the payment of costs of repair of such property. As against the contention of the heirs at law that the statute was not passed until after the death of testatrix and could not validate the prior attempted gift to the commonwealth because their rights as heirs had already vested at the time of the death and that the attempted gift was invalid at that time the court held the gift valid and said that its validity was not dependent on whether the legislature has authorized the receipt of the property bequeathed or devised to the commonwealth prior to the death of the doner; that such gift was valid in the absence of a statute prohibiting it; and that the Act of 1933 was purely a procedural act providing a method for handling property received by the commonwealth under a will.

As his last proposition defendant contends that the Act of 1953 in question is unconstitutional in that it provides a gift to public officers upon their retirement in violation of Article 5, § 47, of the Constitution of the State of Oklahoma. We do not agree.

The portion of the Act complained of is 60 O.S.Supp.1953, § 396, which merely provides that the trustees shall receive the sum of $200 per month while acting as such trustees. There is no provision therein for a gift of any kind to any one, public officer or otherwise, nor is there any provision therein for retirement of any public officer or for payment of any kind to any public officer upon retirement. The Act provides for compensation to the trustees only while acting as trustees and not upon their retirement, and therefore does not violate Article 5, § 47, of the Constitution.

We conclude that the trial court did not err in overruling the demurrer of defendant Mitchell and entering judgment for plaintiffs as against such defendant.

Affirmed.

JOHNSON, C. J., and DAVISON, HALLEY, JACKSON, CARLILE, JJ., concur.

WELCH, CORN and BLACKBIRD, JJ., dissent.