Dear Representative Reese,
¶ 0 This office received your request for an official Opinion addressing, in effect, the following questions:
 1. Are not-for-profit rural electric cooperatives eligible to purchase goods and services from the Department of Corrections?
 2. Are not-for-profit rural electric cooperatives eligible to utilize inmate labor?
 GOODS AND SERVICES
¶ 1 In 1983 the Oklahoma Legislature enacted Title 57 O.S.549.1 entitled, "Purchase of prison industries goods and services." The statute today reads:
 A. The Department of Corrections is authorized to purchase in the manner prescribed by law, facilities, equipment, raw materials and supplies, and to engage the supervisory personnel necessary to establish and maintain for this state at the penal institutions, now or hereafter under the control of the State Board of Corrections, industries and agricultural programs for the utilization of services of prisoners in the manufacture or production of such articles or products as may be needed for the construction, operation, maintenance or use of any office, department, institution or agency supported in whole or in part by this state and the political subdivisions thereof.
. . . .
 D. All counties, cities, districts or political subdivisions, or any agency thereof, may purchase the goods or services produced by the prison industries of the Department of Corrections through their properly authorized purchasing authority, or they may place a direct order without competitive bid, with the prison industries of the Oklahoma Department of Corrections.
 E. Not-for-profit corporations or charitable agencies chartered in Oklahoma or other states may purchase such goods and services. . . . All entities which contract with the state, its political units, its agencies, its public institutions, not for profit corporations or charitable agencies chartered in Oklahoma may purchase goods or services from the Department of Corrections which are used in the performance of such contracts. . . .
57 O.S. 549.1 (1998).
¶ 2 Rural electric cooperatives are organized under Title 18O.S. 437.1 which states:
 Cooperative, nonprofit, membership corporations may be organized under this act for the purpose of supplying electric energy and promoting and extending the use thereof in rural areas. Corporations organized under this act and corporations which become subject to this act in the manner hereinafter provided are hereinafter referred to as "cooperatives".
¶ 3 Because rural electric cooperatives are not-for-profit corporations, they would be eligible to purchase inmate goods and services from the Department of Corrections.
 LABOR
¶ 4 The Oklahoma State Constitution directs that "[t]he contracting of convict labor is hereby prohibited." OKLA. CONST. Article XXIII, Section 2. However, the Constitution also states that "[t]he right of the State to engage in any occupation or business for public purposes shall not be denied nor prohibited. . . ." OKLA. CONST. Article II, Section 31. The Oklahoma Supreme Court reconciled these two sections, finding that the State's right to engage in business for a public purpose does not violate the prohibition on contracting inmate labor.
¶ 5 For example, in Rice v. State, 232 P. 807, 813 (Okla. 1924), the Oklahoma Supreme Court found that the intention of Article XXIII, Section 2 was to prohibit the State from leasing convicts to individuals or private corporations, thereby losing direct control of inmates. If the State was not responsible for the well-being of the convict, cruelty and unfairness to the convict could result. Id. However, since the State's use of convict labor would not undermine the ultimate purpose of Section 2, the Court found that the State was entitled to use inmate labor and services for public purposes. Id. at 810; see alsoSibel v. State Board of Public Affairs, 244 P.2d 307 (Okla. 1952) (holding that a contract between the State and the State Board of Public Affairs by which the Board would install a book binding plant in a state penitentiary for the purpose of repairing state-owned textbooks did not violate the constitutional provision prohibiting the contracting of convict labor).
¶ 6 Out of the decision that the State may constitutionally utilize convict labor came two distinct programs, the "Private Prison Industry" and the "Prisoners Public Work Act".[1]
Private Prison Industries are maintained inside a prison facility, while Public Work Acts involve transporting prisoners to public work sites.
 PRIVATE PRISON INDUSTRIES
¶ 7 The "Private Prison Industry" was developed by Title 57 O.S. 510, which states that the Department of Corrections Director is authorized:
 To maintain such industries, factories, plants, shops, farms, and other enterprises and operations, hereinafter referred to as prison industries, at each institution as the State Board of Corrections deems necessary or appropriate to employ the prisoners or teach them skills, or to sustain the institution. . . . Any industry which employs prisoners shall be deemed a "State Prison Industry" if the prisoners are paid from state funds including the proceeds of goods sold as authorized by Section 123f of Title 74 of the Oklahoma Statutes. Any industry in which wages of prisoners are paid by a nongovernmental person, group, or corporation, except those industries employing prisoners in work-release centers under the authority of the Department of Corrections shall be deemed a "Private Prison Industry"[.]
57 O.S. 510(A)(4) (1998).
¶ 8 Private prison industries are subject to the rules of the Board of Corrections as well as to all laws governing employment, wages, and working conditions. 57 O.S. 545(A) (1998)
¶ 9 According to the Oklahoma Supreme Court, private prison industries are constitutional under Article XXIII, Section 2 because the State retains control over the inmates, which assures that inmates will not be subjected to cruelty at the hands of a private individual or corporation. See Rice, 232 P. at 812-13. Further, the Rice Court found that penal institutions are public institutions which are vital to the public welfare. Id.
at 810. Because the employment of inmates promotes better health, welfare, contentment and discipline, the Court held that private industries act with a public purpose when creating inmate jobs.Id. The fact that the outcome might be an entity able to compete in the free market does not change the public purpose to a private purpose. Id.
¶ 10 Rural electric cooperatives, like any other non-governmental entities, would be eligible to contract with the Department of Corrections to develop a "Private Prison Industry" within a correctional facility.[2] ¶ 11 Inmate labor may also be utilized through the "Prisoners Public Works Act." A public works project is described as:
[A] project that has been determined by the Board of Corrections to be of necessity for the public well-being conducive to rehabilitation and the reduction of recidivism among participating inmates by the written request of a majority of the board of county commissioners, the governing body of any municipality or any agency of the State of Oklahoma or of the United States or any subdivision thereof.
57 O.S. 216(2) (1998).
¶ 12 While operating under the Public Works Act, an inmate may not be assigned to work on private property except for public purposes. In other words, the work must be essentially public and for the general good of the inhabitants of the state or political subdivision. See 57 O.S. 222(A) and 57 O.S. 222(B) (1998). In addition, the inmate labor may not be used to reduce employees or replace regular maintenance or operations of the public entity. See 57 O.S. 510(A)(14) (1998).
¶ 13 As described in Title 18, Section 57 O.S. 437.1 supra,
rural electric cooperatives provide electricity to rural areas. However, membership in an electric cooperative is exclusive. An individual must make specific agreements before being allowed to join a cooperative. By statute:
 No person who is not an incorporator shall become a member of a cooperative unless such person shall agree to use electric energy furnished by the cooperative when such electric energy shall be available through its facilities. The bylaws of a cooperative may provide that any person . . . shall cease to be a member thereof if he shall fail or refuse to use electric energy made available by the cooperative. . . . Membership in the cooperative shall not be transferable, except as provided in the bylaws. The bylaws may prescribe additional qualifications and limitations in respect to membership.
18 O.S. 437.7(a) (1991).
¶ 14 Plainly stated, because rural electric cooperatives serve only their memberships, they do not meet the definition of a county, city, municipality, agency or political subdivision of the State of Oklahoma or of the United States. Hence, they are not eligible to apply for inmate labor for a Public Works Project.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Under Oklahoma laws, 57 O.S. 549.1(E) (1998) and 18 O.S. 437.1 (1991), not-for-profit rural electric cooperatives may purchase goods and services from the Department of Corrections.
 2. Under Oklahoma laws, 57 O.S. 510(A)(4), 57 O.S. 545(A), and 57 O.S. 549(A)(1) (1998), rural electric cooperatives could contract with the Department of Corrections to develop and maintain a Private Prison Industry; however, under Oklahoma laws 47 O.S. 216(2), 47 O.S. 222(A) (1998) and (B), and 18 O.S. 437.1 and 18 O.S. 437.7 (1991), rural electric cooperatives are not eligible for a Public Works Project because they are not public entities.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
BARBARA C. STONER ASSITANT ATTORNEY GENERAL
[1] There is also a program referred to as a "Work Release Program." See 57 O.S. 543 (1991). However, this program does not involve contracting inmate labor. Instead, eligible inmates are granted passes so that they may maintain private jobs in the community. The Department of Corrections does not find the jobs for the inmates and has no connection with the employer. Because this program does not relate to your question, it will not be discussed further.
[2] Though it would seem unlikely for an electric cooperative to develop a Private Prison Industry, it is feasible. Title 18O.S. 437.2(h) (1991) gives an electric cooperative the power to construct distribution lines, equipment, property, etc. which might be necessary for accomplishing its purpose. That production could potentially be conducted in a prison setting.